2001 ME 53

**Charles T. YORK et al.**

v.

**TOWN OF OGUNQUIT et al.**

Supreme Judicial Court of Maine.

Argued: Dec. 13, 2000.
Decided: April 4, 2001.

Alan S. Nelson, Esq., (orally), Prescott Lemoine Jamieson & Nelson, P.A., Saco, for plaintiffs.

Roy T. Pierce, Esq., (orally), John P. McVeigh, Esq., Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, (for Town of Ogunquit), Paul D. Cadigan, Esq., (orally), Wayne T. Adams, Esq., Kennebeunk, for defendants.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Charles T. York and others [1] (York) appeal from a judgment entered in the Superior Court (York County, *Fritzsche, J.*) affirming the Ogunquit Planning Board's approval of Robert Young's final subdivision plan. York challenges Young's standing, the Planning Board's authority to grant waivers of ordinance provisions, the sufficiency of the findings of fact issued by the Board and the sufficiency of the evidence on which those findings were based, and the Board's approval of the plan without compliance with subdivision requirements. Although we are convinced of Young's standing and the sufficiency of both the evidence and the findings of fact, we vacate the judgment and remand for the limited reasons that are stated below.

[¶ 2] In July of 1998, Robert Young sought approval from the Ogunquit Planning Board for the development of a thirty-nine lot subdivision, the Windward Subdivision. At the time, Young's interest in the property consisted of his right to pur-

---

1. The original plaintiffs included fourteen abutters, the first of whom named in the complaint was Steven H. Arnold. Thus, the name of this case in the Superior Court was *Steven H. Arnold et al. v. Town of Ogunquit et al.* Three of the original plaintiffs chose not to pursue this appeal before us, however, including Arnold. The name of the case has therefore been changed to *Charles T. York et al. v. Town of Ogunquit et al.,* because York is the next named original plaintiff who participates in this appeal.

chase the property pursuant to two purchase and sale agreements. Young has since purchased both parcels and conveyed title to a limited liability company, but does continue to hold a mortgage interest in both parcels.[2]

[¶ 3] The Board met and discussed the plan for the subdivision numerous times between August of 1998 and June of 1999. The Board held two public hearings and conducted one site review. Abutters participated in both public meetings and voiced various concerns. On June 21, 1999, the Board voted to accept and approve the final plan for the subdivision on three conditions, one of which was the condition that "the developer will discuss

bonding requirements with the Town Manager."

[¶ 4] The Board later issued twelve pages of findings of fact approving Young's application. Included in its approval were waivers of five Ogunquit Subdivision Standards requirements and one Ogunquit Zoning Ordinance requirement discussed at many of the meetings: a thirty-two foot road width requirement, a six percent road grade requirement, a cul-de-sac dead end street design requirement, a two street connections requirement, and a five foot sidewalk width requirement.[3] The Board disclosed the lengthy considerations underlying each waiver.[4] Finally, the findings included the statement that Young had *not*

---

2. Young conveyed title to Windward Ogunquit, LLC, and has taken back a mortgage on the parcels.

3. The Subdivision Standards waived by the Board provide:

> 10.3.1.11. Subdivisions containing fifteen (15) lots or more shall have at least two street connections with existing public streets or streets shown on the Official Map as such exists, or streets on an approved Subdivision Plan for which a bond has been filed.
> 10.3.2. The following design standards apply according to street classification:
> . . . Minimum Pavement width [for collector streets is] 32′
> . . . Sidewalk width [for collector streets is] 5′
> . . .
> 10.3.4. Dead-end Streets. . . .[D]ead-end streets shall be constructed to provide a cul-de-sac turn-around . . . .
> . . .
> 10.3.5.1. Grades of all streets shall conform in general to the terrain, and shall not be . . . more than . . . 6 percent for collector streets, or 6 percent for minor streets in residential zones . . . .

Ogunquit, Me., Standards for Reviewing Land Subdivisions and Other Projects §§ 10.3.1.11, 10.3.2, 10.3.4, 10.3.5.1 (Apr. 3, 2000). The road width requirement also has a corresponding provision in the Ogunquit Zoning Ordinance itself which provides. "All collec-

tor streets shall be designed and constructed in accordance with the specifications for local residential streets, except that paved traveled surface shall be at least 32 feet in width." Ogunquit, Me., Ogunquit Zoning Ordinance § 10.2(B)(3) (Apr. 5, 1999).

4. The waivers included: (1) a waiver of the six percent maximum road grade to seven percent in order to make an intersection safer by providing a grade platform, decrease soil disturbance, allow a wider vegetative buffer, and reduce the noise and time of construction; (2) a waiver of the street width from thirty-two feet to twenty-four feet in order to allow increased storm water absorption and retention, decrease storm water runoff, maximize natural storm water treatment, decrease impact on clam beds, decrease flooding potential, decrease overall environmental impact, decrease disturbance to soil and vegetation, allow more vegetative buffers to decrease noise and increase privacy, preserve the small town character of the area, reduce vehicle speed and make the area safer, and increase wetland and plant protection; (3) a waiver of the public street connection requirement from two connections to one in order to discourage traffic and thereby increase safety and leave natural features undisturbed; (4) a waiver of sidewalk width from five to four feet in one 250–foot area in order to permit installation of a sidewalk where it would otherwise be too narrow, decrease disturbance to existing traffic lanes, and allow placement of a

demonstrated a legal interest in the property. At a subsequent Board meeting on May 22, 2000, the findings of fact were amended to fix a "clerical error" by removing the word "not" from the statement that Young had not demonstrated an interest in the property. Thus, the Board found that Young *did* have a legal interest in the property for the proposed subdivision.

[¶ 5] On July 16, 1999, York filed a complaint in the Superior Court for review of the Board's decision pursuant to M.R. Civ. P. 80B.[5] The Superior Court affirmed the Ogunquit Planning Board's approval of Young's subdivision plan, and this appeal by York followed.

▆▆ [¶ 6] Because the Superior Court acted in an appellate capacity, we review the decision of the Planning Board directly for "error of law, abuse of discretion or findings not supported by substantial evidence in the record." *Sproul v. Town of Boothbay Harbor,* 2000 ME 30, ¶ 8, 746 A.2d 368, 372 (quoting *Veilleux v. City of Augusta,* 684 A.2d 413, 415 (Me.1996)). Substantial evidence is "evidence that a reasonable mind would accept as sufficient to support a conclusion." *Id.* We may not substitute our own judgment for that of the Board. *Brooks v. Cumberland Farms, Inc.,* 1997 ME 203, ¶ 12, 703 A.2d 844, 848.

## I.

▆▆ [¶ 7] York first contends that Young lacked the requisite standing to

pursue a development application before the Board because he had no interest in the property he proposed to develop.[6] To have standing, that is, a sufficient personal stake in the outcome of a case, a party must have a "right, title or interest" in the property he or she seeks to develop. *Halfway House, Inc. v. City of Portland,* 670 A.2d 1377, 1381. Although the initial findings of fact by the Board indicated that Young did not have standing to pursue his development application, that finding was the result of a clerical error and was amended by the Board.

[¶ 8] Furthermore, various title documents submitted at oral argument clearly resolve the standing issue in favor of Young. Although gaps in his interest do appear in the form of short lapses in the agreements to extend the closing dates for the purchase and sale agreements, these temporary gaps appear only at noncrucial points in this litigation. At all crucial times—the submission of Young's plan to the Board, the plan's approval by the Board, the issuance of the Superior Court's decision, and the argument before us—Young's "right, title or interest" has been clearly established.

## II.

▆▆ [¶ 9] Relying principally on *Perkins v. Town of Ogunquit,* 1998 ME 42, 709

---

sidewalk otherwise impossible to build along stonewalls and gardens; and (5) a waiver of the cul-de-sac street design in favor of a hammerhead or "T-shaped" street end on two streets to leave natural features and wetlands undisturbed while still allowing emergency vehicles to access those streets.

5. Direct appeal of a Planning Board decision to the Superior Court is permissible only if so provided in the municipal zoning ordinance. 30–A M.R.S.A. § 4353(1) (1996). The Ogunquit Zoning Ordinance does provide for such

direct appeals. Ogunquit, Me., Ogunquit Zoning Ordinance § 6.5 (Apr. 5, 1999). *See Perkins v. Town of Ogunquit,* 1998 ME 42, ¶ 5 n. 5, 709 A.2d 106, 107–08 n. 5.

6. Young contends that the plaintiffs lack standing as well. As abutters who have participated in the Board meetings and demonstrated the potential for particularized injury as a result of the approval of Young's plan, the plaintiffs clearly have standing to appeal the Board's decision. *See Sproul,* 2000 ME 30, ¶ 7, 746 A.2d at 372.

A.2d 106, York contends that the waivers granted by the Board were actually impermissible variances that the Planning Board had no authority to grant and that must instead be approved by the municipal Zoning Board of Appeals. In *Perkins*, a landowner was denied a variance from the seventy-five-foot lot frontage requirement of the Ogunquit Zoning Ordinance by the Ogunquit Board of Appeals because he could not establish undue hardship.[7] *Perkins*, 1998 ME 42, ¶ 4, 709 A.2d at 107. Three weeks later, the landowner requested and was a granted a waiver of the same requirement by the Ogunquit Planning Board. *Id.* We held that the waiver was invalid because it circumvented zoning requirements by functioning as a variance granted in the absence of a finding of undue hardship.[8] *Id.* ¶ 12, 709 A.2d at 110. We also noted that the Planning Board is without power to grant such a variance because of "the Legislature's express and implicitly exclusive grant of variance-granting authority to boards of appeals." *Id.* ¶ 9, 709 A.2d at 108. Thus, only the board of appeals is vested with the authority to grant a variance of zoning ordinance provisions.

■ [¶ 10] In this case, however, the waivers granted by the Board for four of the five requirements—the sidewalk width, cul-de-sac street end design, road grade, and street connections requirements—are waivers of *Ogunquit Subdivision Standards* alone. This is unlike the situation in *Perkins*, where the Board purported to waive an *Ogunquit Zoning Ordinance* provision. *See id.* ¶ 4, 709 A.2d at 107. The Planning Board does have the authority to waive strict application of Subdivision Standards in certain circumstances, on a Board finding of extraordinary and unnecessary hardship *or* because of the special circumstances of a plan.[9] The record is

7. General variances may be granted only upon a finding of "undue hardship," defined as:

A. The land in question can not yield a reasonable return unless a variance is granted;

B. The need for a variance is due to the unique circumstances of the property and not to the general conditions in the neighborhood;

C. The granting of a variance will not alter the essential character of the locality; and

D. The hardship is not the result of action taken by the applicant or a prior owner. 30–A M.R.S.A. § 4353(4) (Supp.2000).

8. The statute relevant to Perkins' claim has since been amended to include a new section for dimensional variances:

4–C. **Variance from dimensional standards.** A municipality may adopt an ordinance that permits the board [of appeals] to grant a variance from the dimensional standards of a zoning ordinance when strict application of the ordinance to the petitioner and the petitioner's property would cause a practical difficulty and when the following conditions exist:

. . .

As used in this subsection, "dimensional standards" means and is limited to ordinance provisions relating to lot area, lot coverage, frontage and setback requirements.

30–A M.R.S.A. § 4353(4–C) (Supp.2000). Thus, the lot frontage requirement at issue in *Perkins* is now specifically subject to this "practical difficulty" inquiry rather than the "undue hardship" standard in the general variance.

9. The power of a municipality to grant such power to the Board is conferred by 30–A M.R.S.A. § 3001 (1996):

Any municipality, by the adoption, amendment or repeal of ordinances or bylaws, may exercise any power or function which the Legislature has power to confer upon it, which is not denied either expressly or by clear implication, and exercise any power or function granted to the municipality by the Constitution of Maine, general law or charter.

30–A M.R.S.A. § 3001 (1996). The Town of Ogunquit has indeed granted such power to the Planning Board in its Subdivision Standards, which state in pertinent part:

replete with evidence that there are special circumstances associated with Young's plan necessitating these four waivers. This is true even though some of the rationale for the waivers could apply to any plan. For example, the steepness of the property caused significant concerns regarding stormwater runoff and retention, and resulted in the Board permitting a seven rather than a six percent road grade. The waivers also operate to preserve more of the natural features of the property, which is aesthetically desirable, and better for the environment because they reduce the impact on clam beds and vegetation. The waivers also are beneficial in reducing the property's potential flooding problems. Four of the waivers were therefore granted by the Board pursuant to its authority under State statute and municipal ordinance. These four waivers were based on substantial evidence of special circumstances as is required by the Subdivision Standards.

■ [¶ 11] The remaining fifth requirement, however, that streets must be thirty-two feet in width, is mandated not just by the Subdivision Standards, but also by Ogunquit Zoning Ordinance itself, which provides, "... paved traveled surface shall be at least 32 feet in width." Ogunquit, Me., Ogunquit Zoning Ordinance § 10.2(B)(3) (Apr. 5, 1999). *See supra* note 3. This requirement is limited to

"collector streets," defined in the Zoning Ordinance as, "Any street that carries the traffic to and from the major arterial streets to local access street, or directly to destinations or to serve local traffic generators." Ogunquit, Me., Ogunquit Zoning Ordinance § 2 (Apr. 5, 1999). At least one of the street width waivers granted by the Board was for a collector street; in fact, the Board's findings of fact specifically state, "The Board approved the requested waiver from 32 feet to 24 feet from the collector road, Windward Way ...." Therefore, in granting Young a waiver of the thirty-two foot street width requirement, the Board has granted Young a waiver of a provision mandated by the Ogunquit Zoning Ordinance. This is impermissible.

■ [¶ 12] Although the Board may waive Subdivision Standards requirements, it is not granted the authority to waive Zoning Ordinance provisions. This is the basis of our holding in *Perkins*, that Zoning Ordinance provisions are specifically subject to the variance analysis mandated by state statute in 30-A M.R.S.A. § 4353(4) (Supp.2000). *Perkins*, 1998 ME 42, ¶ 12, 709 A.2d at 110. Thus, deviation from Zoning Ordinance provisions may be obtained only when the requisite finding is made by the Zoning Board of Appeals. There is no dispute that the Board of Appeals made no such finding in this case.

12.1. Where the Planning Board finds that extraordinary and necessary hardships may result from strict compliance with these standards or where there are special circumstances of a particular Plan, it may vary these standards so that substantial justice may be done and the public interest secure; provided that such variations will not have the effect of nullifying the intent and purpose of the Official Map, the Comprehensive Plan, or the Zoning Ordinance, where such exist.

12.2. Where the Planning Board finds that, due to special circumstances of a par-

ticular Plan, the provision of certain required improvements is not requisite in the interest of public health, safety, and general welfare, or is inappropriate because of inadequacy or lack of connecting facilities adjacent or in proximity to the proposed subdivision, it may waive such requirements, subject to appropriate conditions. Ogunquit, Me., Standards for Reviewing Land Subdivisions and Other Projects §§ 12.1, 12.2 (Apr. 3, 2000). Therefore, pursuant to these two authorities, the Ogunquit Planning Board is permitted to waive non-Ordinance Subdivision Standards.

The Planning Board's grant of a waiver of the street width requirement, therefore, was beyond its authority.

[¶ 13] The Board's waiver of the street width requirement is the only waiver that was erroneously granted. This error does not require the disapproval of Young's plan in its entirety, but only that limited portion of the plan that violates the street width Zoning Ordinance requirement. In vacating the Superior Court judgment, we remand for compliance with the Ogunquit Zoning Ordinance requirement of a thirty-two foot road width on the collector street or streets, or for the Board of Appeals to consider a variance of the street width requirement for Young pursuant to 30–A M.R.S.A. 4353(4) (Supp.2000) and the Ogunquit Zoning Ordinance § 5.2(B)(2).[10]

### III.

[¶ 14] York also contends that the twelve pages of findings of fact issued by the Board regarding the five waivers as well as the criteria for subdivision approval enumerated in 30–A M.R.S.A. § 4404 (1996 & Supp 2000)[11] are both inadequate and based on insufficient evidence pursuant to 1 M.R.S.A. § 407(1) (1989).[12] We disagree. Although agencies are required to make written factual findings sufficient to show the applicant and the public a rational basis of its decision, the agency is not required to issue a complete factual record. *Cook v. Lisbon Sch. Comm.*, 682 A.2d 672, 677 (Me.1996). "If there is sufficient evidence on the record, the Board's decision will be deemed supported by implicit findings." *Forester v. City of Westbrook*, 604 A.2d 31, 33 (Me.1992). Substantial evidence exists if there is any competent evidence in the record to support a decision. *Adelman v. Town of Baldwin*, 2000 ME 91, ¶ 12, 750 A.2d 577, 583.

[¶ 15] The record before us reveals considerable evidence to support the Board's determinations, including the four properly granted waivers. All of the issues were addressed and discussed at numerous Board meetings held over the course of more than a year. There was sufficient competent evidence, including evidence supporting a finding of the special circumstances of Young's plan, on which the Board could have based its ample findings of fact.

### IV.

[¶ 16] Finally, York contends that the Board violated Ogunquit ordinance requirements by approving Young's final plan in the absence of the posting of a performance bond.[13] Young has discussed

---

**10.** We also note that to the extent that the Ogunquit Zoning Ordinance's thirty-two-foot road width requirement is greater than the width of any existing road in Ogunquit, Ogunquit remains free to amend that requirement to a more narrow width or to eliminate it altogether.

**11.** The Board is required to consider nineteen factors such as water supply, traffic, pollution, and sewage disposal before approving any subdivision plans pursuant to 30 M.R.S.A. § 4404 (1996 & Supp.2000).

**12.** Specifically, 1 M.R.S.A. § 407(1) (1989) provides in pertinent part:

**1. Conditional approval or denial.** Every agency shall make a written record of every decision involving the conditional approval or denial of an application, license, certificate or any other type of permit. The agency shall set forth in the record the reason or reasons for its decision and make finding of the fact, in writing, sufficient to appraise the applicant and any interested member of the public of the basis for the decision.

**13.** The Subdivision Standards provide. "There shall be submitted to the board with the Final Plan ... [a] performance bond to secure completion of all improvements re-

the bonding requirement with the Town Manager, but there is no dispute that this provision has not actually been fulfilled. Although some towns may permit their Planning Boards to approve a plan and leave the amount and details of the bond to the town, the plain language of the Ogunquit Subdivision Standards requires compliance with the bond conditions *prior* to the Board's approval of the final plan. The failure to comply with this technical provision is not fatal to Young's plan for proposed subdivision development, however, and does not require that the entire plan be disapproved. Accordingly, we remand only for fulfillment of the bond requirement and either compliance with or a variance from the street width requirement.

The entry is:

Judgment vacated and remanded to the Superior Court with instructions to remand the case to the Ogunquit Planning Board only for compliance with the street width requirement of the Ogunquit Zoning Ordinance and the bond requirement of the Ogunquit Subdivision Standards.

quired by the board and written evidence that the Municipal Officers are satisfied with the sufficiency of such bond." Ogunquit, Me., Standards for Reviewing Land Subdivisions and Other Projects § 7.3.2. (Apr. 3, 2000). In addition, the Subdivision Standards provide:
Before the Planning Board grants approval of the Final Plan, the subdivider shall, in an amount set by the Planning Board, either, file with the Municipal Treasurer a certified check to cover the full cost of the required improvements or the subdivider shall file with the Municipal Treasurer a performance bond to cover the full cost of required improvements.... The applicant shall present, as part of his complete application, a copy of the receipt from the Town Treasurer.
Ogunquit, Me., Standards for Reviewing Land Subdivisions and Other Projects § 7.1.7. (Apr. 3, 2000).