STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS. SUPERIOR COURT
CLERK'S OFFICE CIVIL ACTION
DOCKET NO. AP-03-52

2004 MAR -4 A 10: 59
REC-CUM-3/4/2004

HANNAH O'TOOLE
          Petitioner
      v.

CITY OF PORTLAND
          Respondent.

ORDER ON PETITIONER'S RULE
80B APPEAL

DONALD L. GARBRECHT
LAW LIBRARY

MAY 12 2004

This matter is before the court on Petitioner's Rule 80B appeal from the decision of the City of Portland's Zoning Board of Appeals ("Board").

## FACTUAL BACKGROUND

Petitioner is the owner of two substandard contiguous lots (30' x 100') in the Riverton section of Portland. The lots are located in Portland's R-3 zoning district, R. at 1, and, unlike much of the surrounding area, have never been developed. The lots were established before zoning, are under single ownership, and may be merged under the Portland Zoning Ordinance. Petitioner wishes to merge the lots and build a home on them. Petitioner alleges that her proposed home complies with all zoning ordinance requirements for the City's R-3 Zone, with the exception of a sixty-five foot (65') lot width requirement[1] for which she sought a five foot (5') "practical difficulty variance" from the Board under § 14-473 of the Code.[2]

The Board heard the Petitioner's Appeal on July 17, 2003, R. at 20, and voted 4-2 to deny the variance. R. at 85. On August 7, 2003, the Board voted 3-0-1 to approve the

---

[1] The usual minimum lot width requirement in the R-3 Zone is seventy-five feet (75'). However, the City of Portland's Code of Ordinances ("Code") contains an exception for "Lots of Record" like Petitioner's that reduces the minimum size to sixty-five feet (65'). Code, § 14-90(f) at 14-80.
[2] In seeking the variance, Petitioner acted through her nephew, Michael McGonigle, holder of the power of attorney and was represented by Attorney Lourie. R. at 20.

1

Findings of Fact regarding the Petitioner's Appeal of July 17, 2003. R. at 92. On August 15, 2003, pursuant to Rule 80B of the Maine Rules of Civil Procedure, Petitioner appealed the Board's decision to this court.

## DISCUSSION

Standard of Review

The court reviews a decision of the Board directly for abuse of discretion, errors of law, or findings not supported by substantial evidence in the record. See McGhie v. Town of Cutler, 2002 ME 62, ¶ 5, 793 A.2d 504, 505. "Substantial evidence is evidence that a reasonable mind would accept as sufficient to support a conclusion." York v. Town of Ogunquit, 2001 ME 53, ¶ 6, 769 A.2d 172, 175. The court may not substitute its own judgment for that of the Board. See id.; Brooks v. Cumberland Farms, Inc., 1997 ME 203, ¶ 12, 703 A.2d 844, 848. The burden of persuasion in an action challenging the decision of the Board rests on the party seeking to overturn the Board's decision. See Sawyer Envtl. Recovery Facilities, Inc. v. Town of Hampden, 2000 ME 179, ¶ 13, 760 A.2d 257, 260.

In the present case, the court reviews the Board's denial of Petitioner's practical difficulty variance under section 14-473 of the Code. The section provides, in pertinent part:

a. Notwithstanding the provisions of 14-473(c)(1) and (2) of this section, the board of appeals may grant a variance from the dimensional standards of this article when strict application of the provisions of the ordinance would create a practical difficulty, as defined herein, and when all the following conditions are found to exist:
  1. The need for the variance is due to the unique circumstance of the property, and not to the general conditions in the neighborhood;
  2. The granting of the variance will not have an unreasonably detrimental effect on either the use or the fair market value of abutting properties;
  3. The practical difficulty is not the result of action taken by the applicant;

2

4. No other feasible alternative is available to the applicant, except a variance;
5. The granting of a variance will not have an unreasonably adverse effect on the natural environment; and
6. The property is not located, in whole or in part, within a shoreland area, as defined in M.R.S.A. § 435, nor within a shoreland zone or flood hazard zone, as defined in this article.

b. The following words have the meanings set forth below:
1. Dimensional standards: Those provisions of this article which relate to lot areas, lot coverage, frontage, and setback requirements.
2. Practical difficulty: A case where strict application of the dimensional standards of the ordinance to the property for which a variance is sought would preclude a use of the property which is permitted in the zone in which it is located and also would result in economic injury to the applicant.

Code, § 14-473(c)(3)(a.)& (b.).

At the Board hearing, Petitioner had the burden of establishing that her request for a variance met all of the above criteria. See Perrin v. Town of Kittery, 591 A.2d 861, 863 (Me. 1991). To make its determination on whether Petitioner met her burden, the Board used a seven-point decision form. See R. at 87-90. The Board determined Petitioner failed to meet two of the criteria on the form, namely: (1) Petitioner's need for the variance was not due to the unique circumstances of the property, but rather the general conditions of the neighborhood; and (2) there were other feasible alternatives available to the applicant independent of the Board granting the variance. See Respondent's Br. at 3.

Unique Circumstance of the Property

The Board's conclusion that Petitioner's need for a variance is based on the general conditions of Petitioner's neighborhood, rather than on the unique circumstances of her property, is based on an error of law and is not supported by the record. When reviewing requests for variances, it is axiomatic that the Board look at the present conditions of an applicant's neighborhood and not the conditions of the

3

neighborhood as they existed over a half-century ago. In the present case, the record reflects that the Board based its decision on the manner in which lots in the neighborhood were divided up in the 1920s, rather than looking at the present day ownership of, and building patterns on, the lots. See e.g. R. at 40, lines 20-21 (Hall: "I'm looking at a lot of little boxes. They are all 30 feet wide"). The record does show that there are other substandard lots in Petitioner's neighborhood. See R. at 29, lines 9-11 (Sawyer: "Even on Hampton Street alone we have one, two, three, five other lots that *may* be in the exact same situation") (emphasis added). However, when read together with other evidence in the record, this evidence is not substantial enough to support the Board's decision. See R. at 40, line 25 (Lourie: "They are not all 30 feet wide"); R. at 41, lines 25-26 (Lourie: "And the fact is, a lot of these other properties may be not conforming the same way, but they've been built on).

In contrast, the evidence in the record shows that, in light of the present day general conditions of her neighborhood, Petitioner's situation is indeed unique. See R. at 68, lines 18-21 (Hall: "There is a difference between the way the lots were divided up and the neighborhood was designed and then, the way the ownership has emerged); R. at 27, lines 12-18 (Lourie: "This lot 60 foot-wide – these two lots – are one of a handful of lots that don't meet the minimum lot width requirements, even when combined. If you look beyond this property at the next property going back toward Luke Street, you'll see in [sic] those two lots combined achieve the minimum 65 feet, and that's true on the whole plan"); R. at 45, lines 7- 18 (C. Shannon: "Everybody in my neighborhood owns lots, big lots at least four or five of these lots" . . . J. Shannon: "I'm his wife and I totally agree. I think what we have in our neighborhood is a nice neighborhood. It's large lots"); R. at 69, lines 24-26 (Bogiatto: "It appears from the neighbors that . . . most of them owns [sic] three, sometimes four lots").

4

In addition, the record shows that rather than looking at whether substandard undeveloped lots were characteristic of Petitioner's neighborhood, the Board placed undue emphasis on whether such lots were common within the City of Portland. R. at 29, lines 17-20 (Corp. Counsel: "my point is this – that it's not only in this particular neighborhood. I think there are actually individuals here who are interested in the outcome of this because they are similarly situated"); R. at 34, lines 20-23 (Sawyer: "You are saying that if we grant this, we are opening the door to other substandard lots throughout the City to also come in and ask for a variance"); R. at 35, lines 1-3 (Little's Response to Sawyer: "I think, having worked with the Plannning Board, I can list probably five developers that will be in here after the same thing"); R. at 67, lines 19-20 (Hall: "I think it would set precedent for all sorts of these small lots throughout the city"). As a result, the Board's determination was based on a misapplication of the test for approving a variance under section 14-473 of the Code.

Given that a reasonable mind could not conclude that the Board's decision on this matter was legally sound or supported by the record, see York, 2001 ME 53 at ¶ 6, 769 A.2d at 175, and that the Petitioner has met her burden of proving the existence of a unique circumstance on her property, the Board's refusal to grant the variance on this basis cannot be sustained.

Feasible Alternatives

The Board's decision that there were other feasible alternatives available to Petitioner was also based on an error of law. The Board determined:

> The Petitioner did not pursue other reasonable alternatives for the development of this lot, namely the Petitioner made no attempt to acquire additional property sufficient to alleviate the need for a variance.

R. at 95. Whether the abutting land was available to Petitioner and whether Petitioner made any attempt to purchase the abutting land are irrelevant to the determination of

5

whether feasible alternatives were available. Cf. Marchi v. Town of Scarborough, 511 A.2d 1071, 1073 (Me. 1986) (holding that a "variance to permit development of a substandard parcel may not be denied solely on the ground that the applicant had an offer of purchase. A landowner has the right to develop his land; he is not required to sell it") (citing Anderson, American Law of Zoning § 18.54 at 292 (2d ed. 1977)). Moreover, the fact that any available land actually existed and was available to Petitioner was purely speculative and should not have played into the Board's decision. See Hannum v. Board of Envtl. Prot., 2003 ME 123, ¶ 15, 832 A.2d 765, 770 n.6 (reversing a decision based on speculation and not evidence); Connolly v. Bd. of Soc. Work Licensure, 2002 ME 37, ¶ 9, 791 A.2d 125, 127-28 (vacating an administrative agency conclusion that was "speculative" and "not supported by any evidence").

In addition, the court's finding is consistent with the City's ordinance. Section 14-473 defines "practical difficulty" in the context of a practical difficulty variance as a situation where the "strict application of the dimensional standards of the ordinance *to the property* for which a variance is sought would preclude a use of the property which is permitted in the zone in which it is located and also would result in economic injury to the applicant." Code, § 14-473(c)(3)(b.) (emphasis added). The language of the ordinance makes it clear that Petitioner was required to establish that there were no other feasible alternatives available given the dimensions of her lot, not that there were no other feasible alternatives given the dimensions of her lot coupled with land on a neighboring lot. The court finds that Petitioner made this showing. See R. at 27, lines 1-5 (establishing that a variance is required for *anything* to be built on the lot).

Accordingly, the Board's determination that Petitioner failed to establish that there were no other feasible alternatives available on her lot cannot be sustained.

6

## Authority to Grant Variance

Based on unsupported findings and erroneous conclusions of law, the Board determined that granting a variance was beyond the jurisdiction of the Zoning Board of Appeals. See R. at 95. However, Petitioner has established all seven of the criteria set out in section 14-473 of the Code and therefore, the Board must grant Petitioner her requested variance. See Code, § 14-473. Accordingly, the Board's denial of the variance is reversed.

## DECISION

Pursuant to M. R. Civ. P. 79(a), the Clerk is directed to enter this Order on the Civil Docket by a notation incorporating it by reference and the entry is:

The decision of the Board is REVERSED and remanded to the Board for further proceedings consistent with this order.

Dated at Portland, Maine this 2nd day of March 2004.

_____
Robert E. Crowley
Justice, Superior Court

Date Filed __08-15-2003__  __Cumberland__  Docket No. __AP-03-52__
                                  County

Action __80B Appeal__

HANNAH O'TOOLE                               CITY OF PORTLAND

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| David A. Lourie, Esq.<br>189 Spurwink Avenue<br>Cape Elizabeth, ME 04107<br>(207) 799-4922 | Charles A. Lane<br>Associate Corporation Counsel<br>City of Portland<br>389 Congress Street<br>Portland, ME 04101-3509 |

Date of
Entry

2003