STATE OF MAINE
CUMBERLAND, SS

SUPERIOR COURT
CIVIL ACTION
DOCKET AP-03-076

BETSEY ALDEN,
        Appellant / Plaintiff

        v.

## DECISION AND JUDGMENT ON APPEAL
(M.R.Civ.P. 80B)

TOWN OF HARPSWELL
and WALTER SCOTT MOODY,
        Defendants

## I. NATURE OF ACTION

This is an appeal by Betsey Alden, pursuant to M.R. Civ. P. 80B, from the town's

approval for an extension of a wharf on the property of Walter Moody adjacent to that of Alden.

## II. BACKGROUND

Betsey Alden is the owner of waterfront property on the Wallace Shore Road in

Harpswell. Defendant Walter Moody is the owner of the lot immediately to the south of the

Alden property. Moody applied to the town for approval of a proposed pier expansion under the

Wharves and Weirs Act, 38 M.R.S.A §1022 et seq. The proposal was to expand the existing 8' x

40' wharf to 140' in length. Municipal officers held an on-site meeting on June 9, 2003 and on

October 2, 2003, voted to approve the application. No written decision was issued at that time.

The officers met again on November 13, 2003, and after public comment, voted again to approve

the permit. A written notice of decision, dated November 18, 2003, was issued.

Plaintiff alleges that the vote to revoke the October 2 decision, the revote and decision on

November 13, 2003, and the following notice of decision was procedurally defective as no

written decision was issued within 10 days of the October 2nd vote. Alden alleges: (1) that

Moody has not demonstrated that the proposed wharf expansion will not obstruct navigation; (2)

that the expansion exceeds the parameters for such an expansion under the Town's Shoreland Zoning Ordinance and Land Use Ordinance; (3) that Moody has not demonstrated his title to the tidal area that he wishes to occupy; and (4) that the size of the wharf is disproportionate to the property that it serves.

Alden moved for a stay on January 9, 2004, pending the outcome of a title action in West Bath District Court, which would determine who holds title to the intertidal area that the wharf expansion would be located on. This court (Humphrey, J.) granted the stay with the provision that it would expire either at the conclusion of the West Bath District Court matter and a final determination of the status of title or April 30, 2004, whichever came first. When the stay expired, Alden moved for an additional stay, until the conclusion of the action or September 1, 2004. Defendant Moody objected, claiming that plaintiff had done nothing to advance the district court matter since February 11, 2004. Defendant wished to move the matter along since he had received word from the Army Corps of Engineers that his permit for construction was granted and he wanted to build before the season was over. The court denied the second stay application on June 2, 2004.

To rebut Alden's assertions that navigation will be impaired, Moody points to (1) the Army Corps of Engineers Report, which states that even with the 100' extension there will be a minimum 16' wide low water passage between pile supports at the deepest point between Moody Ledge and the upland shore and (2) that he received title to the intertidal land through warranty and quit claim deeds.

### III. STANDARD OF REVIEW

The Superior Court independently examines the record and reviews the decision of municipal boards for abuse of discretion, error of law or findings unsupported by substantial

2

evidence in the record. *York v. Town of Ogunquit,* 2001 ME 53, ¶ 6, 769 A.2d 172, 175,

*Cumberland Farms v. Town of Scarborough,* 1997 ME 11, ¶ 3, 688 A.2d 914, 915. The

substantial evidence standard requires the court to examine the entire record to determine

whether the board could have rationally decided as it did, based on the facts presented to it.

*Ryan v. Town of Camden,* 582 A.2d 861, 863 (Me. 1991). Substantial evidence is evidence that a

reasonable mind could accept as sufficient to support the conclusion reached. *Sproul v. Town of*

*Boothbay Harbor,* 2000 ME 30, ¶ 8, 746 A.2d 368, 372. A court is not permitted to substitute its

own judgment for that of the Board. *York,* 2001 ME 53, ¶ 6, 769 A.2d 172, 175, *Brooks v.*

*Cumberland Farms, Inc.,* 1997 ME 203, ¶ 12, 703 A.2d 844, 848. The Board's decision is not

wrong simply because facts in the record are inconsistent or a different conclusion could be

drawn from them. *Twigg v. Town of Kennebunk,* 662 A.2d 914, 915 (Me 1996). This Court

must affirm the decision below unless it finds errors of law, abuses of discretion, or

unreasonableness on the Board's part. To succeed on appeal, a plaintiff must prove that the

evidence compels an opposite conclusion. *Boivin v. Town of Sanford,* 588 A.2d 1197, 1199 (Me.

1991).

## IV. DISCUSSION

### A. The wharf as an obstruction to navigation:

The Army Corps of Engineers report states that there will be 16 feet of passage, even at

low tide, which could allow for small watercraft to get by the extended wharf. The harbormaster

also gave his approval to the expansion.

While the Board heard testimony about an alternate route, it is unclear whether the Board

took that into its consideration of whether there was an obstruction. One of the neighbors who

would be affected by the expansion said he would have to go to the south side of the ledge and

enter the channel there instead of where he now enters; however, Richard Ward, "an affected boater," agreed that "he would be able to gain access to his property with his lobster boat through the passage." (See record at p. 59).

The Law Court has held that pursuant to the Wharves and Weirs statute, a landowner whose property adjoins tidal flats owns the flats to the low water mark subject to certain public rights, among them navigation and fishing. *Blaney v. Rittall,* 312 A.2d 522, 528 (Me. 1973). A landowner may build a wharf so long as it does not interrupt or impede navigation of the tidewaters. *Id.* Municipal officers of the town in which the wharf is to be located were to decide, after a hearing, whether the wharf would be an obstruction to navigation or would injure the rights of others, if the officers did not find an obstruction, they are to issue the license. *Id.* In a footnote in *Blaney,* the court mentions that the original interpretation of the Colonial Ordinance of 1876 was that the tide flats owner could exclude the public from the land by enclosing and building a wharf on the land, but that interpretation was abandoned in *Commonwealth v. Alger,* 61 Mass. (7 Cush.) 53, 79 (1851). *Blaney,* 312 A.2d at 528 n. 7 (attached).

At the November 13 meeting, the selectmen discussed the obstruction issue and came to the conclusion that one could go around the ledge and come around the other side (based on a drawing that the Selectmen had). (Record at pp. 26-27). Once they discovered that smaller boats could pass, they inquired if that satisfied the people who raised the issue of obstruction. (Id. at p. 27). The Chairman stated that he did not know, but the selectmen still voted to approve the project. (Id.). The fisherman who originally objected in June did not speak at the hearing. Alden argues that "obstruction" does not mean "no alternate route available," (which is how she believes the Board interpreted it); it means any obstruction at all. However, the Army Corps of

4

Engineers report that states that there will be 16 feet for a boat to pass the wharf, which suggests that navigation is feasible.

**B. Title to the intertidal land:**

It is not necessary for the court to decide the ownership of the intertidal land, but it must decide if the Board had reason to issue the permits; that is, whether Moody had sufficient interest in the land at the time of the application for the Board to believe that he had standing for the permits to be granted.

The Board relied on Moody's adverse possession claim to some of the land, which he bases on his family fishing the land. One of the rights of individuals under the Colonial Ordinance of 1641, as amended in 1647, is the right of the public to fish the intertidal lands — if this is true, then Moody cannot sustain a claim for adverse possession based on something that everyone is permitted to do. As recently as 1989, the Law Court held that the public has the rights of fishing, fowling and navigating the intertidal zones. *Bell v. Town of Wells,* 557 A.2d 168, 173 (Me. 1989).

The question is whether the selectmen could "reasonably conclude that the applicant has right, title, or interest in the intertidal zone based on the deeds filed with the application." Notice of Decision (record at p. 1); *see also* record at tab 19 (letter from town's attorney regarding right, title or interest in the flats). Based on those deeds, the Board concluded that Moody had right, title or interest to the intertidal land, although based on their citation to the Colonial Ordinance, they also could have concluded that fishing the land does not get one over the adverse possession hump (*see* record at pp. 34-35). While Alden argues that the Board's reliance on the quitclaim deeds was in error, the Board reasonably concluded that Moody had right, title or interest when he presented the deeds in response to their request for proof that he had interest in the land. The

5

Board also stated that it was not its role to determine the validity of the deeds or to referee a boundary dispute between Alden and Moody.

## C. Notice of decision:

The Board voted on October 30, 2003 to revoke its October 2, 2003 decision because it had not allowed interested members of the public the chance to comment. The Board believed that the lack of public comment was error. The plaintiff argues that the lack of a mailed decision invalidates the approval. If however, she had appealed to the Superior Court at that time, the court would have no doubt remanded to the Board to have a hearing where the public could speak, the court would not have denied the license out of hand. *See Glasser v. Town of Northport,* 589 A.2d 1280, 1282 (Me. 1991).

In this instance, though the Board erred in not allowing the public to speak at the October 2, 2003 meeting, it corrected its own error and gave the plaintiff the opportunity to be heard on November 13, 2003. The Board then sent a notice of the final decision to the plaintiff within 10 days. Even though it could have acted more diligently, the Board did act appropriately to fix its earlier error.

## V. DECISION AND JUDGMENT

Alden has not provided any evidence or argument that compels the reversal of the decision below.

The clerk will make the following entry as the Decision and Judgment of the court:

- The decision of the Board of Selectmen permitting Walter Scott Moody to extend his pier is affirmed.

SO ORDERED.

Dated: __Nov. 22, 2005__

Thomas E. Delahanty II
Justice, Superior Court

6

Date Filed __12-01-2003__ ____Cumberland____ Docket No. __AP-03-76__
County

Action __80B Appeal__

BETSEY ALDEN

THE TOWN OF HARPSWELL
WALTER SCOTT MOODY

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Roger R. Therriault, Esq.<br>Michael E. Therriault, Esq.<br>48 Front Street<br>Bath, Maine  04530<br>207-443-5182 | Orville T. Ranger, Esq. (Moody)<br>P.O. Box 694<br>Brunswick, Maine  04011-0694<br>7255509<br><br>Sally J. Daggett, Esq.<br>P.O. Box 4510<br>Portland, Maine  04112<br>207-775-7271 |

| Date of Entry | |
|---|---|
| **2003**<br>Dec. 2 | Received 12-01-2003:<br>Summary Sheet Filed. |
| "    " | Plaintiff's 80B Appeal with attachment filed. |
| "    " | On 12-2-03.<br>Briefing Schedule mailed. Appellant's Brief due 1-12-04. |
| Dec. 17 | Received 12-16-03.<br>Entry of Appearance of Orville T. Ranger Esq., on behalf of Defendant Walter Scott Moody filed. |
| Dec. 22 | Received 12-22-03.<br>Entry of Appearance of Sally J. Daggett, Esq., on behalf of Defendant, Town of Harpswell filed. |
| Dec. 24 | Received 12-24-03:<br>Acknowledgment of Receipt of Summons and Complaint filed showing receipt of sevice on 12/09/03 upon defendant, Town of Harpswell to Sally Daggett, Esq. |
| "    " | Summons upon Defendant, Town of Harpswell (unsigned) filed. |
| "    " | Acknowledgment of Receipt of Summons and Complaint filed showing receipt of service on December 18, 2003 to Defendant, Walter Scott Moody to Orville T. Ranger, Esq. |
| "    " | Summons upon Defendant, Walter Scott Moody (unsigned) filed. |
| Jan. 12 | Received 01-09-04:<br>Plaintiff, Betsey Alden Application for Stay of Rule 80B Action filed. |
| Jan. 14 | Received 01-13-04:<br>Order for Stay filed. (Humphrey, J.).<br>On Application of the Plaintiff, and with concurrence of all other parties, and with the determination that the stay of this matter pending the outcome continued on to next page.......... |