STATE OF MAINE
Cumberland, ss

SUPERIOR COURT
Civil Action
Docket No. AP-05-079

CUM-TED-8/28/06

NORMAND LAUZE,
     Appellant / Plaintiff

v.

**DECISION AND JUDGMENT ON APPEAL**
(M.R.Civ.P. 80B)

TOWN OF HARPSWELL,

     Defendants

## I. NATURE OF ACTION

This is an appeal by Normand Lauze, pursuant to M.R. Civ. P. 80B, from the

Town of Harpswell's (hereinafter referred to as "town" or "Harpswell") refusal to allow

him to maintain a ramp and float for his boat at Totman's Point.

## II. BACKGROUND

The petitioner Normand Lauze owns waterfront property located on Totman's

Point in Harpswell. In 1999, Lauze applied for a permit pursuant to the Harpswell

Shoreland Zoning Ordinance and the Maine Wharves and Weirs Act, 38 M.R.S.A. §

1022, to construct a ramp and float on his property. The town never issued a written

permit, but the petitioner claims that he received verbal approval to construct the ramp

and float from the town's code enforcement officer (CEO).

On July 26, 2005, the Harpswell CEO issued a notice of violation[1] to the

petitioner, indicating that Lauze did not have a permit for his existing ramp and float

---

[1] The letter issued from the CEO, dated July 26, 2005, provides that "any decision of this office including this letter of violation may be appealed to the Zoning Board of Appeals. Any appeal must be filed within

and was in violation of Section 15.3 and Table 1 of the Town of Harpswell Shoreland Zoning Ordinance.[2] The notice instructed that Lauze complete the enclosed "Wharf Permit Application Package" or remove the ramp and float. On July 29, 2005, Lauze spoke with the CEO who confirmed that the town did not have any record of issuing or exempting a land use permit for the ramp and float.

On August 8, 2005, Lauze filed an "after-the-fact" wharf permit application to maintain his 4' by 30' ramp and his 12' by 24' float that he constructed in 2000.[3] In addition to the permit required by the town, the ramp and float system required a permit from the Army Corps of Engineers. Lauze had obtained that permit on December 22, 1999. The ramp and float did not require a Department of Environmental Protection permit because they are seasonal structures.

Pursuant to the procedure detailed in 38 M.R.S.A. § 1022, on August 29, 2005, the Board of Selectmen ("the Board"), acting under the Wharves and Weirs Act, conducted an on-site public hearing regarding Lauze's application. (R. at 66) The minutes of the hearing indicate that the ramp and float are seasonal and do not appear to adversely affect the rights of others, but are a hazard to navigation. The minutes also state that the float remains afloat at normal low tide (R. at 66) and that one selectman suggested

---

forty (40) days from the date of this letter." The petitioner never appealed the CEO's notice of violation, and as a result, the notice is final and Lauze's argument in section II of his brief fails.

[2] The record does not contain the Shoreland Zoning Ordinance, but the respondent provided brief overviews of the sections.

[3] According to the town, when Lauze completed the "Wharf Application Permit Package" he simultaneously filed a Wharves and Weirs Act license application. This makes sense when considering that the statute requires:

> Any person intending to build or extend any wharf, fish weir or trap in tidewaters, within the limits of any city or town, shall apply in writing to the municipal officers of the city or town, stating the location of the weir, the boundaries of the cove in which the weir will be constructed as identified on a map prepared by the Commissioner of Marine Resources, limits and boundaries, as nearly as may be, of the intended erection or extension, and asking license for the intended erection or extension.

38 M.R.S.A. § 1022 (2005).

2

that the length of the structure be shortened by 4' and moved 15' south. Subsequently, on September 7, 2005, the town's harbormaster stated in writing that he approved Lauze's application on condition that Lauze adjust the ramp and float to set it 15 feet South of its current position.

On September 15, 2005, the Board held a public meeting to consider Lauze's application. Lauze informed the Board that he obtained approval for the ramp and float system in 1999, but did not have a written permit. A Selectman stated that, in 1999, the Board did not issue written permits, but if it did approve Lauze's permit, the minutes of the meeting would demonstrate the approval. Consequently, the Board voted to table the application so they could investigate and research Lauze's claim.

At the Board's next meeting, on September 29, 2005, the CEO testified that he researched the Board's minutes but found no evidence that the Board heard or approved a wharf application for the petitioner. After additional testimony from the CEO and petitioner, the Board voted 2-0 to deny the application and ordered Lauze to remove his ramp and float system within 30 days. The Board reasoned that the ramp and float system would obstruct navigation and interfere with the rights of others.

Pursuant to § 1022, the Board issued a written decision within 10 days of its vote and mailed a copy of the same to interested parties. Lauze timely filed this 80B appeal.

### III. DISCUSSION

*A. Standard of Review*

This court independently examines the record and reviews the decision of municipal boards for abuse of discretion, error of law or findings unsupported by substantial evidence in the record. *York v. Town of Ogunquit*, 2001 ME 53, ¶ 6, 769 A.2d 172, 175. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Palesky v. Town of Topsham*, 614

3

A.2d 1307, 1309 (Me. 1992). A court is not permitted to substitute its own judgment for that of the Board, *York*, 2001 ME 53, ¶ 6, 769 A.2d at 175, and the Board's decision "is not wrong because the record is inconsistent or a different conclusion could be drawn from it." *Twigg v. Town of Kennebunk*, 662 A.2d 914, 915 (Me. 1996). Finally, the party seeking to overturn the board's decision has the burden of demonstrating that the evidence compels a contrary conclusion. *Boivin v. Town of Stanford*, 588 A.2d 1197, 1199 (Me. 1991).

*B. Estoppel*

Lauze argues that the Board cannot deny his wharf permit application because he detrimentally relied on the CEO's 1999 misrepresentation that Lauze had a valid permit for the float and ramp system. In response, the respondent contends that Lauze improperly uses the equitable estoppel doctrine.

Estoppel is "available only for *protection*, and cannot be used as a weapon of assault." *Waterville Homes, Inc. v. Maine DOT*, 589 A.2d 455, 457 (Me. 1991) (citation omitted) (emphasis added). Furthermore, estoppel "is an equitable affirmative defense that operates to absolutely preclude a party from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy." *Id.* (internal quotations and citation omitted).

In *Buker v. Town of Sweden*, 644 A.2d 1042, 1042 (Me. 1994), a property owner appealed the town planning board's denial of his application for a conditional use permit for removal of water. The property owner argued that that the planning board should be estopped from denying the permit because the owner had relied to his

4

detriment on the planning board's assertion that it would consider his permit application under a different category. *Id.* at 1044. The Law Court rejected the argument, reasoning that because "we have held that equitable estoppel can be asserted against a municipality only as a defense, the property owner "improperly brings the claim of equitable estoppel as an affirmative cause of action."[4] *Id.*

Similarly, Lauze's arguments demonstrate that he attempts to use estoppel offensively. As in *Buker*, Lauze argues that the Board should be estopped from denying his application due to detrimental reliance on the CEOs' statements in 1999. Indeed, the town has not taken any enforcement action against Lauze that he must now defend against; rather, *he* appealed the denial of the license for which *he* applied.[5] This demonstrates that Lauze uses the doctrine solely as a basis for his prosecution of this appeal.

### C. Temporary Floats

Lauze next argues that the town lacks jurisdiction in this case because the Wharves and Weirs Act does not apply to seasonal or temporary wharfs. According to the petitioner, because the Act only defines weir, and defines it as a permanent structure, the Act must be strictly construed to exclude temporary structures such as the petitioner's ramp and float system. Predictably, the town contends that the Act does apply to temporary structures.

---

[4] *Tarason v. Town of S. Berwick*, 2005 ME 308, ¶ 16, 868 A.2d 230, 234, the Law Court approvingly cited this proposition of law. In Tarason:

> [T]he Town did not bring an enforcement action against Tarason. It merely stated that the use of Tarason's property was in violation of the Town's ordinance. Tarason appealed this decision to the ZBA, the Superior Court, and finally to this Court. Consequently, the Superior Court correctly concluded that Tarason cannot affirmatively estop the Town from bringing an enforcement action against him.

*Id.*

[5] See *supra* note 1.

5

Although the Wharves and Weirs Act defined a weir as "a fixed structure erected and maintained during part of each fishing season in the tidewater," the Act never explicitly limits its application to permanent structures. Indeed, because the purpose of the Act is to promote and protect "fishing, fowling, and navigation," excluding temporary structures would obviate these objectives and render the statute meaningless. *See Bell v. Wells,* 557 A.2d 168, 173 (Me. 1989).

### D. Substantial Evidence on the Record

The Board can grant licenses to erect or expand a wharf or weir only when such structures will not be an obstruction to navigation or injure to the rights of others. *See* 38 M.R.S.A. § 1022. The written decision of the Board stated that the ramp and float system obstructs navigation. The Board explained:

> [T]his is a narrow passage, reasonably heavily used with a strong current because of its narrowness. The float is used to tie up a boat of 14 foot beam. The wharf itself makes the passage even narrower[,] and with a boat the restriction is appreciably worsened . . . Two boats could not reasonably pass, and many fishing boats would not be able to turn around with this ramp and float in place . . . This is one of the areas of Harpswell with the swiftest current and is narrow to the point that it should not be further restricted.

At the on-site hearing, the harbormaster concurred with a selectman that Lauze's structure be moved 15 feet to the South to address potential navigation hazards. (R. at 66-67, 72-73). The CEO also believed that the structure needed to be moved for safety reasons. (R. at 61-62).

Several selectmen, based on personal knowledge,[6] likewise believed that Lauze's structure posed navigation danger. Selectman Weil stated that that he is "very familiar this particular wharf and this passage and it is a narrow passage." (R. at 73-74) Selectman Weil also believed that the placement of "no wake" signs on the property by

---

[6] A Board member may rely on competent personal knowledge. *Adelman v. Town of Baldwin,* 2000 ME 91, ¶ 11, 750 A.2d 577, 582.

Lauze indicate that the petitioner acknowledges the narrow width of the channel. (R. at 98). Additionally, selectmen Theberge visited the area after the on-site hearing and noticed that the channel is busy with good-sized boats navigating it. (R. at 90). Theberge also stated that he crossed the channel in approximately a 45′ boat but felt that there was "not much room." (R. at 90). Finally, Selectman Theberge mentioned that the narrow area that encompasses petitioner's structure has strong rip tides.

Although the petitioner did provide evidence that there is 140 feet between his float and the opposing shore during low tide,[7] the rest of the record does not compel that the Board's decision should be overturned. The width of the channel may seem wide enough for navigation, but the water depth may be too shallow across the channel for boats to safely pass or pass at all. (*See* R. at 97). Additionally, as previously discussed, the testimony from the CEO and the harbormaster coupled with the personal knowledge of the selectmen supports the Board's findings and decision.

## IV. DECISION AND JUDGMENT

The clerk shall make the following entry on to the docket as the Decision and Judgment of the court:

A. There are adequate facts of record to support the findings by the Town of Harpswell Board of Selectmen.

B. The Decision of the Town of Harpswell Zoning Board of Appeals is affirmed.

C. Judgment is entered for the respondent Town of Harpswell.

SO ORDERED.

Dated: August 28, 2006

Justice, Superior Court

---

[7] In fact, one Selectman said that a few days prior to the September 25, 2005 hearing, he passed through the channel and "didn't have a sense that I had 140 feet."

7

Date Filed __10-14-05__ __CUMBERLAND__ Docket No. __AP05-79__
County

Action __80B APPEAL__

NORMAND LAUZE                          TOWN OF HARPSWELL MAINE

                                      vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| William Ferdinand Jr Esq | William Dale, Esq. |
| PO Box 5249 | Sally J. Daggett, Esq. |
| Augusta Maine 04330 | P.O. Box 4510 |
| | Portland, Maine   04112 |
| | 775-7271 |

| Date of Entry | |
|---|---|
| 2005 Oct. 17 | Received 10-14-05. Complaint pursuant to 38 M.R.S.A. 1021 et seq and M.R.Civ.P. 80 B with exhibits A-E filed. |
| " " | On 10-17-05. Briefing schedule mailed.  Plaintiff's brief and record due 11-23-05. |
| Nov. 2 | Received 11-02-05: Entry of Appearance of William H. Dale, Esq. and Sally Daggett, Esq. on behalf of the Defendant, Town of Harpswell, Maine filed. |
| Nov. 4 | Received 11-04-05: Acknowledgment of Receipt of Summons and Complaint filed. Upon Defendant, Town of Harpswell Maine to Rosalind Knight, Clerk. |
| Nov. 18 | Received 11-17-05: Plaintiff's Motion for Enlargement of time to file brief and Record on Appeal filed. |
| Nov. 21 | Received 11-21-05: Order Enlarging Time filed. (Delahanty, J.) The Plaintiff's Motion for Enlargement of Time to file the Record on Appead  and their brief is hereby GRANTED. Plaintiff shall file these documents by December 16, 2005. On 11-21-05 copies mailed to William Ferdinand Jr., Esq., William Dale, Sally Daggett, Esqs. |
| Dec. 16 | Received 12-16-05. Plaintiff's record filed. |
| "" | Plaintiff's brief filed. |
| 2006 Jan. 17 | Received 1-17-06. Defendant, Town of Harpswell's, Rule 80B Brief filed. |
| Feb. 1 | Received 1-31-06. Plaintiff's reply brief filed. |

| Date of Entry | |
|---|---|
| | Docket No. __AP-05-79__ |
| **2006**<br>June 28 | On 06-28-06:<br>Hearing Held on 80B appeal.<br>Court takes matter under Advisement.<br>Justice Thomas Delahanty Presiding.<br>No record made. |
| July 07 | Received 07-07-06:<br>Letter from William Dale, Esq. to Justice Delahanty stating as a follow up to the oral argument in the matter, Defendant Town Cites the Court to the Rule 80B record Citations filed. |
| Aug. 31 | Received 08-28-06:<br>Decision and Judgment on Appeal filed. (Delahanty, J.).<br>The clerk shall make the following entry on to the docket as the Decision and Judgment of the Court: A. There are adequate facts of record to support the findings by the Town of Harpswell Board of Selectman. B. The Decision of the Town of Harpswell Zoning Board of Appeals is affirmed. C. Judgment is entered for the respondent Town of Harpswell. SO ORDERED.<br>On 08-31-06 Copies mailed to William Dale, Sally J. Daggett and William Ferdinand, Esqs. Ms Deborah Firestone, Goss Mimeograph, The Donald Garbrecht Law Library and Loislaw.com Inc. |