1998 ME 42

**Rena W. PERKINS, et al.**

v.

**TOWN OF OGUNQUIT**

and

**Robert W. Scanlon, Jr.**

Supreme Judicial Court of Maine.

Argued Dec. 3, 1997.

Decided March 2, 1998.

William C. Knowles (orally), and Seth W. Brewster, Verrill & Dana, Portland, for Rena & Newell Perkins.

E. Stephen Murray (orally), Murray, Plumb & Murray, Portland, for Roger & Lee LaPierre and Lilly Andrews.

Michael J. O'Toole (orally), Woodman & Edmands, P.A., Biddeford, for Robert Scanlon, Jr.

Penny Littell, Preti, Flaherty, Beliveau & Pachios, L.L.C., Portland, for Town of Ogunquit.

Before ROBERTS, CLIFFORD, RUDMAN, and LIPEZ, JJ.

CLIFFORD, Justice.

[¶ 1] Robert W. Scanlon [1] appeals from a judgment entered after a non-jury trial in the Superior Court (York County, *Fritzsche, J.*) vacating the Town of Ogunquit's waiver of a frontage requirement granted to Scanlon. Scanlon contends that the court erred in deciding that the Ogunquit Planning Board lacked authority to waive certain performance standards set out in the Town's zoning ordinance. Finding no error, we affirm the judgment.

[¶ 2] Robert Scanlon owns improved property in the Town of Ogunquit at 9 Beach

---

1. The complaints brought by Rena W. Perkins, Newell S. Perkins, Roger and Lee LaPierre, and Lilly Andrews named the Town of Ogunquit as defendant and Scanlon as a party-in-interest. The separate complaints were consolidated on appeal to this Court. The Town does not appeal the decision of the Superior Court, and Scanlon is treated as a defendant. The LaPierres and Lilly Andrews are represented by the same attorney and are referred to as "the LaPierres."

Street on which is located a building (the Fox House). Scanlon's property is a non-conforming lot with frontage of between 74.26 and 74.94 feet in a zoning district requiring seventy-five feet of frontage.[2] Rena Perkins, Roger and Lee LaPierre, and Lilly Andrews are abutting property owners.

[¶ 3] In the summer of 1995, the 100–year–old Worster House located across the street from the Fox House was scheduled for demolition by its owner in order to build a parking lot. Scanlon submitted numerous proposals to the Town to move the Fox House to the rear of his lot, and to move the Worster House from across the street to the front of the Fox House lot to save it from destruction.

■ [¶ 4] On May 16, 1996 the Town's Board of Appeals denied Scanlon a variance from the 75–foot street frontage requirement on the Fox House lot because he was unable to establish hardship pursuant to 30–A

M.R.S.A. § 4353 (1996 & Supp.1997).[3] The Board did grant him a special exception to store the Worster House on the Fox House Lot, apparently contingent upon his securing a waiver from the frontage requirement pursuant to alternate authority, at issue in this litigation, which a local ordinance vests in the Planning Board. On June 3, 1996 the Planning Board granted Scanlon a waiver, pursuant to the Standards section for the Limited Business District, that provides that "[t]he Planning Board may waive the ... street frontage ... requirements of this article ... when the proposed use involves a structure or building that existed in 1930 ... where such structures are required to comply with the Design Review Standards...."[4] The Town Code Enforcement Officer then issued a permit, and Scanlon moved the Worster House to the Fox House lot.

■ [¶ 5] Pursuant to 30–A M.R.S.A. § 4353(1)[5] and M.R.Civ.P. 80B, the Perkins

---

2. The Zoning Ordinance of the Town of Ogunquit, Title X, Chapter 1, Limited Business District § 1505.3, provides in pertinent part:

   The following space standards shall apply:
   Minimum land area:      7500 sq ft
   Minimum street frontage: 75 ft
   ....

3. Section 4353 provides in pertinent part:

   Any municipality which adopts a zoning ordinance shall establish a board of appeals subject to this section.
   **1. Jurisdiction; procedure.** The board of appeals shall hear appeals from any action or failure to act of the official or board responsible for enforcing the zoning ordinance....
   **2. Powers.** In deciding any appeal, the board may:
   A. Interpret the provisions of an ordinance called into question;
   B. Approve the issuance of a *special exception permit or conditional use permit* in strict compliance with the ordinance *except that, if the municipality has authorized the planning board ... to issue these permits,* an appeal from the granting or denial of such a permit may be taken directly to the Superior Court if required by local ordinance; and
   C. *Grant a variance* in strict compliance with subsection 4.
   ....
   **4. Variance.** Except as provided in subsections 4–A and 4–B, the board may grant a variance only when strict application of the ordinance to the petitioner and the petitioner's property would cause undue hardship. The

term "undue hardship" as used in this subsection means:
   A. The land in question can not yield a reasonable return unless a variance is granted;
   B. The need for a variance is due to the unique circumstances of the property and not to the general conditions in the neighborhood;
   C. The granting of a variance will not alter the essential character of the locality; and
   D. The hardship is not the result of action taken by the applicant or a prior owner.

4. Zoning Ordinance of the Town of Ogunquit, Title X, Chapter 1, "Note" following § 1505.3. This provision empowering the Planning Board to grant "waivers" appears identically in the Standards section for each zoning district:

   The Planning Board may waive the land area, street frontage, front yard setback and building coverage requirements of this Article and the parking requirements of Chapter 2, Article 2, when the proposed use involves a structure or building that existed in 1930 ... where such structures or buildings are required to comply with the Design Review Standards....
   The Design Review Standards are part of a separate ordinance whose purpose is to preserve the historic values of buildings. *See* Zoning Ordinance of the Town of Ogunquit, Title X, Chapter 2, Art. 8. Chapter 1 § 604.8 empowers the Planning Board to "review building designs and issue Design Certificates" in accordance with the Design Review Standards ordinance.

5. 30–A M.R.S.A. § 4353(1) allows direct appeal from the decision of a Planning Board to the Superior Court on issues of zoning only if the municipal ordinance so provides. *See Freeman*

and the LaPierres filed complaints in the Superior Court. The court vacated the Town Planning Board's grant of the waiver, concluding that the Town Board of Appeals, not the Planning Board, is the sole source of authority to grant such relief from a town zoning ordinance. When the Superior Court functions as an appellate court reviewing the action of a town board, "we review the record directly to determine if the Board abused its discretion, committed an error of law, or made findings not supported by substantial evidence." *LaBay v. Town of Paris,* 659 A.2d 263, 265 (Me.1995); *see also Town of Union v. Strong,* 681 A.2d 14, 17 (Me.1996) ("Interpretation of provisions in a zoning ordinance is a question of law.").

[¶ 6] Scanlon argues that the home rule statutory provisions in 30–A M.R.S.A. § 3001[6] grant municipalities plenary authority to enact regulations, and that the Legislature has neither expressly nor by clear implication removed the power of a town to delegate authority to its Planning Board to waive zoning requirements in narrowly defined circumstances. We disagree with Scanlon's contentions.

■ [¶ 7] Our standard on preemption in the home rule context is clear:

> [T]he Legislature has conveyed a plenary grant of the state's police power to municipalities, subject only to express or implied limitations supplied by the Legislature.... Municipal legislation will be invalidated, therefore, only when the Legislature has expressly prohibited local regulation, or when the Legislature has intended to occupy the field and the municipal legislation would frustrate the purpose of state law.

*International Paper Co. v. Town of Jay,* 665 A.2d 998, 1001–02 (Me.1995).

---

*v. Town of Southport,* 568 A.2d 826, 828 & n. 3 (Me.1990). Ch. 1 § 605.2 of the Ogunquit Zoning Ordinance provides for such a direct appeal.

**6.** Title 30–A M.R.S.A. § 3001 provides in pertinent part:

§ 3001.  **Ordinance power**

Any municipality, by the adoption, amendment or repeal of ordinances or bylaws, may exercise any power or function which the Legislature has power to confer upon it, which is

[¶ 8] The first section of the subchapter on Land Use Regulation, which authorizes local zoning regulation and zoning boards of appeals, is entitled "§ 4351 Home rule limitations," and provides that "[t]his subchapter provides express limitations on municipal home rule authority." Title 30–A M.R.S.A. § 4351 (West 1996 & Supp.1997). Pursuant to that subchapter, local zoning ordinances are authorized to "provide for any form of zoning consistent with this chapter...." 30–A M.R.S.A. § 4352 (1996 & Supp.1997). A municipality adopting a zoning ordinance *"shall establish* a board of appeals subject to this section." 30–A M.R.S.A. § 4353 (emphasis added). The board of appeals is expressly empowered to grant a variance "in strict compliance with subsection 4." *Id.* at § 4353(2)(C).

[¶ 9] Section 4353(2)(B) does not expressly preclude other local bodies from *all* matters concerning a municipality's zoning ordinance. In fact, it provides for a municipality to allow its planning board to issue "special exception and conditional use permits." *Id.* To the extent, however, that, pursuant to Chapter I section 1505.3 of the Ogunquit Zoning Ordinance, the Planning Board's authority to grant a waiver is in reality the power to grant a variance, such authority is prohibited by clear implication. Such a scheme would permit a town to circumvent the Legislature's express and implicitly exclusive grant of variance-granting authority to boards of appeals. Exclusivity is also clearly implied in the language of 30–A M.R.S.A. § 4353(2)(B), describing the powers of planning boards: to *"approve the issuance of a special exception permit or conditional use permit in strict compliance with the ordinance." Id.* The Legislature had no trouble specifying the precise and limited

---

not denied either expressly or by clear implication, and exercise any power or function granted to the municipality by the Constitution of Maine, general law or charter.

. . . .

3.  **Standard of preemption.** The Legislature shall not be held to have implicitly denied any power granted to municipalities under this section unless the municipal ordinance in question would frustrate the purpose of any state law.

30–A M.R.S.A. § 3001 (1996 & Supp.1997)

circumstances in which planning boards would be accorded limited powers. The statutory language is clear that allowing planning boards variance-granting powers would frustrate the purpose of the statute.[7]

[¶ 10] Scanlon contends that the waiver is distinct from the Town's zoning provisions and therefore is not a variance.[8] He argues that the waiver is an integral part of the Design Review article that is a local legislative ordinance that applies uniformly throughout the town. Like a special exception,[9] Scanlon argues, the waiver policy allows that which would otherwise be prohibited, e.g., less than 75 feet of frontage, once there has been a legislative determination that a particular use must be granted, e.g., pre–1930's buildings that the reviewing board finds have met certain standards.[10]

[¶ 11] It is true that our cases have distinguished ordinances that are "general and uniform city-wide" from those that by statutory definition necessarily divide a municipality into different zones in which different proscriptions apply. *Benjamin v. Houle*, 431 A.2d 48, 49 (Me.1981) (city-wide permit procedure for gravel excavation was not "zon-ing" and thus not reviewable by zoning board of appeals); *LaBay*, 659 A.2d at 265 (Me. 1995) (building ordinance that regulates uniformly throughout municipality does not constitute zoning); *see also* 30–A M.R.S.A. § 4301(15–A) (1996) (" 'Zoning ordinance' means a type of land use ordinance that divides a municipality into districts and that prescribes and reasonably applies different regulations in each district."). We have also sustained "blanket" ordinances under the general police power, even when "the subject could have been approached by the less restrictive alternative of a zoning ordinance. . . ." *Town of Boothbay v. National Adver. Co.*, 347 A.2d 419, 423 (Me.1975).

[¶ 12] None of these cases, however, supports Scanlon's position that a mechanism that offers relief from zoning requirements in the form of a uniform town-wide ordinance escapes the limitations applicable to a variance. The ordinances at issue in the cases relied on by Scanlon did not negate the restrictions imposed by the zoning scheme. The independence from the statutory zoning

---

7. The predecessor statute to 30–A M.R.S.A. § 4353 provided for local boards of appeals in only slightly more mandatory language. *See* Former 30 M.R.S.A. § 4963(1) ("A board of appeals *is established* in any municipality which adopts a zoning ordinance.") (emphasis added).

    Scanlon argues that the Attorney General's 1981 opinion that Perkins relies on pre-dated the Legislature's 1987 home rule statute, and therefore it engaged in a "grant" approach to municipal law. That opinion, however, explicitly recognizes the existence of home rule, and more importantly cites the "clear implication" by the Legislature that municipalities are prohibited from vesting the power to grant variances in any other administrative bodies:

> The Legislature has therefore actually established a board of appeals, rather than merely *authorizing a municipality to establish one.* These restrictions are consistent with the Legislature's decision not to vest the power to grant variances in any other administrative bodies. . . . The Legislature has vested in these boards of appeal the authority to grant variances under certain strict conditions [that] reflect the general intent of the Legislature that limitations be imposed on granting exceptions to a general zoning scheme.

*Opinion of the Attorney General* (April 23, 1981) (1981 WL 157143) (interpreting former 30 M.R.S.A. § 4963(1)).

8. We note that the Design Review standards are within the Town's Zoning Ordinance. Scanlon contends, however, that this is the result of poor ordinance-drafting.

9. Scanlon does not argue that the waiver is a special exception, but rather that it is akin to one and therefore equally valid. *See* 30–A M.R.S.A. § 4353(2)(B) (authorizing planning boards to grant special exception permits). The Town of Ogunquit has provided its Board of Appeals, and not its planning board, with the power "to hear and decide only those special exceptions which are authorized by this chapter and which are specifically listed as special exceptions." Zoning Ordinance of the Town of Ogunquit, Title X, Chapter 1, § 502.2.

10. We have distinguished special exceptions from variances:

> A special exception use differs from a variance in that a variance is authority extended to a landowner to use his property in a manner prohibited by the ordinance (absent such variance) while a special exception allows him to put his property to a use which the ordinance expressly permits.

*Cope v. Town of Brunswick*, 464 A.2d 223, 226–27 (Me.1983) (citing *Stucki v. Plavin*, 291 A.2d 508, 511 (Me.1972)).

scheme that we have accorded to non-zoning municipal *prohibitions* does not mean that a waiver whose direct effect is to *circumvent* a zoning requirement should not be deemed a variance subject to the statutory requirements.

[¶ 13] The circumvention in this case is illustrated by the failure of the waiver policy to take into account the purposes of the frontage requirements of the zone. Scanlon's theory suggests that if a pre–1930's building satisfies the Design Review standards—a set of essentially aesthetic considerations [11]—the Planning Board has then been provided with standards to decide whether or not to waive frontage, land area, and setback requirements.[12] Yet merely meeting the aesthetic standards in no way ensures that a waiver proposal will satisfy the fundamental purposes of the zoning requirements. *See* Arden H. & Daren A. Rathkopf, *3 The Law of Zoning and Planning*

§ 34.06 (4th ed.1993) (principal purpose of frontage requirement is usually access for fire and other emergency vehicles).[13]

[¶ 14] Equally significant is the actual experience of Scanlon in this case. The Zoning Board of Appeals denied Scanlon a variance from the 75–foot street frontage requirement on the ground that he could not establish hardship pursuant to 30–A M.R.S.A. § 4353(4). Less than three weeks later, the Planning Board afforded him the same relief he had sought from the Board of Appeals by granting a waiver without findings of fact or articulation of a standard.[14]

[¶ 15] The owner of a pre–1930's structure who is denied a variance from the Board of Appeals pursuant to undue hardship standards set out in 30–A M.R.S.A. § 4353(4) cannot seek a waiver from the Planning Board unencumbered by that statute's variance criteria. The waiver provision frustrates the purpose of the zoning statute.

---

**11.** The Design Guidelines for all Buildings within the District require "visual compatibility" with their surroundings. Chapter 11 § 806. The specific factors in this inquiry are:

  Scale of the Building.
  Height.
  Proportion of Building's Front Facade.
  Relationship of Solids to Voids in Front Facades.
  Proportions of Opening Within the Facility.
  Roof Shapes.
  Relationship of Facade Materials.
  Relationship of Spaces to Buildings on Streets.
  Site Features.
  Architectural, Historical or Neighborhood Significance.

**12.** The Perkins and the LaPierres argue that an applicant who meets all of the design criteria *might or might not* necessarily be entitled to a waiver, and that this lack of standards is constitutionally inadequate. *See Waterville Hotel Corp. v. Board of Zoning Appeals*, 241 A.2d 50, 52 (Me.1968) ("The legislative body may specify conditions under which certain uses may exist and may delegate to the Board discretion in determining whether or not conditions have been met, [but it cannot] delegate to the Board a discretion which is not limited by legislative standards."). Our determination of state preemption makes resolution of the standards issue unnecessary.

**13.** *See also LaPointe v. City of Saco*, 419 A.2d 1013, 1015 ("Minimum area, width and front-

age requirements are generally valid if reasonable. Their purpose is to eliminate overcrowding and to provide light and air."); *MacNeil v. Town of Avon*, 386 Mass. 339, 435 N.E.2d 1043, 1046 (1982) (lack of frontage requirements may increase the amount and size of firefighting equipment required to respond to fire, create congestion and interfere with access by emergency vehicles); *cf. Barnard v. Town of Yarmouth* 313 A.2d 741, 746 (Me.1974) ("The general rule is that minimum lot size requirements, when reasonable, are the proper subjects of the zoning power, since under appropriate circumstances they relate to the legitimate needs of the community in controlling congestion, assuring adequate health and safety by providing light and air, enabling sewage disposal, and minimizing the dangers from spread of fire.").

**14.** The language of the Planning Board waivers and the Zoning Board of Appeals variances is strikingly similar. The Zoning Ordinance's definition of variance provides: "As used in this ordinance, a variance is authorized only for height, area and size of structure or size of yards and open spaces." Zoning Ordinance of the Town of Ogunquit, Title X, Chapter 1 § 201.

The Planning Board's waiver provision similarly addresses the size of yards and open spaces: "The Planning Board may waive the land area, street frontage, front yard setback and building coverage requirements...." Zoning Ordinance of the Town of Ogunquit, Title X, Chapter 1, "Note" following § 1505.3.

Because 30–A M.R.S.A. § 4352 and the statutory scheme of which it is a part impliedly preempt municipal authority from granting relief equivalent to a zoning variance, the waiver provision is invalid.

The entry is:

Judgment affirmed.