2004 ME 71

**David SAWYER et al.**

v.

**TOWN OF CAPE ELIZABETH**

Supreme Judicial Court of Maine.

Argued: March 10, 2004.
Decided: June 3, 2004.

Robert J. Crawford (orally), Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for plaintiff.

Durward W. Parkinson (orally), Bergen & Parkinson, L.L.C., Kennebunk, for Town of Cape Elizabeth.

James B. Haddow, Bruce A. McGlauflin, Petruccelli, Martin & Haddow, L.L.P., Portland, for Joseph Frustaci.

Panel: CLIFFORD,* RUDMAN, DANA, ALEXANDER, CALKINS and LEVY, JJ.

LEVY, J.

[¶ 1] The primary question presented by this appeal is whether the Cape Elizabeth Planning Board's modification of a requirement of the open space zoning standards of Cape Elizabeth's zoning ordinance violates 30–A M.R.S.A. § 4353 (1996 & Supp. 2003), which reserves the authority to grant zoning variances to Zoning Boards of Appeals. Because we conclude that the modification violated section 4353, and also conclude that the Board failed to make required findings regarding the subdivision's buffer, we vacate the Superior Court's (Cumberland County, *Warren, J.*) judgment affirming the Board's decision and remand for further proceedings.

## I. BACKGROUND

[¶ 2] David Sawyer, Elizabeth Sawyer, and Yolande Fogg (the "abutters") appeal from a judgment entered in the Superior Court affirming the Cape Elizabeth Planning Board's approval of the nineteen-lot Blueberry Ridge subdivision proposed by Joseph Frustaci. The abutters own residences along the South Portland boundary of the subdivision, which is located in the Residence C District (RC District) in Cape Elizabeth.

[¶ 3] Frustaci applied to the Cape Elizabeth Planning Board for approval of the subdivision in accordance with the open space zoning standards of the Town's zoning ordinance. *See* Cape Elizabeth, Me., Zoning Ordinance §§ 19–7–1, 19–7–2 (July 1, 2002) [hereinafter Zoning Ordinance]. The stated purpose of the standards "is to incorporate into the Zoning Ordinance tools that will better enable the Town to implement its policies ... to preserve open space and rural character and to provide opportunities for affordable housing ... while respecting the rights of property owners." *Id.* § 19–7–1. Open space subdivisions are required to preserve as "common open space" forty percent of the gross acreage of the lot. *Id.* § 19–7–2(C)(4). The standards recognize that open space zoning will result in the "average size of the individual lots [being] smaller than that required in the district in which the cluster development is located." [1] *Id.* § 19–7–2(C).

---

* Although not available at oral argument, Justice Clifford participated in the development of this opinion. *See* M.R.App. P. 12(a) (stating that "[a] qualified justice may participate in a decision even though not present at oral argument").

1. One commentator has characterized open

[¶ 4] Cape Elizabeth's zoning ordinance provides that the open space standards are "mandatory" for residential subdivisions in the RB District and "optional" for residential subdivisions in the RA and RC Districts. *Id.* § 19–7–2(A)(1), (2). A subdivision applicant in the RA and RC Districts therefore has a choice of proceeding under the open space standards or those districts' underlying zoning standards for non-open space subdivisions (hereinafter, "traditional subdivisions"). The ordinance also authorizes the Planning Board to modify the open space standards in the RA and RC Districts and states that a modification does not constitute a variance:

> In such districts, notwithstanding other provisions of this Ordinance, the Planning Board in reviewing and approving proposed residential subdivisions may modify provisions relating to space and bulk to permit innovative approaches to housing and environmental design in accordance with the standards of this Article. Such modifications of Space and Bulk Standards shall not be construed as granting variances to relieve hardship.

*Id.*

[¶ 5] This appeal concerns the Board's modification of the "building envelope" setback requirement, which is one of the space and bulk requirements of the open space zoning standards. A subdivision applicant opting for open space zoning is required to:

> establish and show ... a building envelope for each lot, within which the building shall be located. The bounds of the building envelope shall be at least seventy-five (75) feet from the right-of-way of any road existing prior to June 4, 1997, at least twenty (20) feet from the right-of-way of the road serving the lot, at least fifty (50) feet from any building envelope on an adjacent lot, and at least five (5) feet from any side or rear lot line.

*Id.* § 19–7–2(C)(6).

[¶ 6] Frustaci applied to the Planning Board for approval of the Blueberry Ridge subdivision, electing to proceed pursuant to the open space zoning standards.[2] The abutters participated in the Planning Board's proceedings and expressed their concerns with the proposed building envelopes, lack of vegetative buffers, adverse traffic impacts, and anticipated drainage and storm water problems. The abutters requested that the Planning Board require Frustaci to comply with all of the requirements of the open space zoning provisions,

---

space zoning as "requir[ing] the clustering of development on the portion of the site most suited for development, while permanently protecting remaining land to be used for agriculture, resource protection, and recreation." Amanda Siek, Comment, *Smart Cities: A Detailed Look at Land Use Planning Techniques that are Aimed at Promoting Both Energy and Environmental Conservation,* 7 Alb. L. Envtl. Outlook 45, 61 (2002).

2. Prior to seeking subdivision review by the Planning Board, Frustaci submitted two applications to the Zoning Board of Appeals seeking variances. He sought: (1) a variance for all but one of the proposed subdivision lots from the twenty-foot side and rear yard

setback requirements in the RC District, section 19–6–3(E)(2); and (2) a variance for one lot from the building envelope requirements of the open space standards, section 19–7–2(C)(6). Frustaci subsequently amended his first application by withdrawing his request to reduce the rear yard setback distances. The ZBA granted the first variance request, as amended, by reducing the side yard setback requirement from twenty feet to fifteen feet. It denied the second variance request regarding the building envelope requirement, concluding that only the Planning Board has the authority to relax the building envelope requirement of the open space standards. No appeal was taken from the ZBA's decision.

including the building envelope requirements.

[¶ 7] The Planning Board approved the subdivision on October 15, 2002. Exercising the modification authority established in section 19–7–2(A)(2) of the open space standards, the Board modified the building envelope setback requirements of fifty feet and the right-of-way setback of seventy-five feet. Specifically, the Board concluded that it could reduce the building envelope setback requirements so long as the RC District's lot line setback requirements for traditional subdivisions are satisfied:

The Board finds that, in order to create building envelopes of a size able to accommodate contemporary homes and design a compact neighborhood consistent with the recommendations of the Comprehensive Plan to promote cluster development . . ., the building envelope setback of 50′ and the right-of-way setback of 75′ provided for in the Open Space Zoning provisions may be reduced to the minimum side and rear yard setbacks allowed in the RC District.

The Planning Board finds that the creation of building envelopes in an abutting community does not prohibit the Planning Board from reducing the 50′ building envelope setback as long as the setbacks of the underlying RC District are met. The Planning Board further notes that the definition of and restrictions imposed by a building envelope in the Blueberry Ridge Subdivision may be more restrictive than the application of any newly created building envelopes in South Portland.

In effect, the Board's modification eliminated the building envelope setback requirements governing the spatial relationship of building envelopes on adjacent lots and replaced them with traditional setback requirements governing the spatial relationship of each building to its lot lines.

[¶ 8] The Planning Board also approved Frustaci's proposal to use both a fence and vegetation to create the buffer between the subdivision and the abutters' properties on Charlotte Road. Specifically, the Board approved the use of wooden stockade fencing in conjunction with vegetative plantings and found that this "provides an adequate buffer that reduces noise and lighting, separates the subdivision from abutting properties and enhances the subdivision."

[¶ 9] The abutters appealed the Board's decision to the Superior Court pursuant to M.R. Civ. P. 80B, asserting that the Planning Board erred as a matter of law by approving the subdivision with building envelopes that are not in conformity with the open space zoning standards. They also claimed that the Board violated both the open space zoning standards and Cape Elizabeth's subdivision ordinance by failing to require Frustaci to use only vegetative buffers around the perimeter of the subdivision and to preserve the larger trees in the subdivision.[3] The court affirmed the Board's decision, and this appeal followed.

## II. DISCUSSION

■ [¶ 10] The Planning Board's interpretation of the open space zoning standards of the zoning ordinance is a question of law that we review de novo. *Isis Dev., LLC v. Town of Wells,* 2003 ME 149, ¶ 3, 836 A.2d 1285, 1287.

---

3. The Town's ordinance provides for direct appeals from the Planning Board to the Superior Court. Cape Elizabeth, Me., Zoning Ordinance § 19–9–7 (July 1, 2002) [hereinafter Zoning Ordinance]. *See also* 30–A M.R.S.A. § 4353(1) (allowing towns to provide for direct appeals from the Planning Board to the Superior Court in a municipal ordinance).

## A. Open Space Zoning Standards

[2] [¶ 11] The abutters contend that although section 19-7-2(A)(2) gives the Planning Board discretion to modify the space and bulk requirements of the open space zoning standards, the Board's modification of the building envelope requirement was, in effect, a variance, and variances can only be issued by zoning board of appeals (ZBAs) in accordance with the statutory criteria set forth in 30-A M.R.S.A. § 4353. The Town and Frustaci respond that section 4353 relates only to mandatory zoning standards and not optional standards, such as the open space zoning standards that are at issue here. They also assert that the open space zoning standards are in the nature of subdivision regulations that may be modified by the Planning Board. The parties cite two opinions, *Perkins v. Town of Ogunquit,* 1998 ME 42, 709 A.2d 106, and *York v. Town of Ogunquit,* 2001 ME 53, 769 A.2d 172, in support of their respective arguments.

[¶ 12] *Perkins* involved our review of a Planning Board's decision to waive a zoning ordinance's street frontage requirement for which the municipality's ZBA had previously denied a variance request made by the same applicant. *Perkins,* 1998 ME 42, ¶ 4, 709 A.2d at 107. We held that only ZBAs have the authority to grant variances. *Id.* ¶ 9, 709 A.2d at 108-09. Based on the home rule provisions in 30-A M.R.S.A. § 3001 (1996),[4] a zoning ordinance that gives a Planning Board waiver authority is preempted by 30-A M.R.S.A. § 4353 if the waiver "is in reality the power to grant a variance." *Perkins,* 1998 ME 42, ¶ 9, 709 A.2d at 108. Because the ordinance provision at issue in *Perkins* empowered the Planning Board to waive the street frontage requirement, the ordinance circumvented the requirement that only ZBAs grant variances of zoning requirements and was therefore invalid. *Id.* n. 4 & ¶ 12, 709 A.2d at 107, 109-10.

[¶ 13] We applied *Perkins* in *York,* 2001 ME 53, ¶¶ 9-12, 769 A.2d at 175-78, and affirmed four of five waivers of the Town's subdivision standards granted by the Planning Board. One of the subdivision standards, pertaining to minimum street width, had a corresponding provision in the Town's zoning ordinance. *Id.* n. 3, 769 A.2d at 174. We vacated the Planning Board's waiver of the minimum street width requirement because the waiver, in effect, constituted the granting of a variance of the corresponding zoning ordinance requirement, which only a ZBA has the authority to grant. *Id.* ¶¶ 11-12, 769 A.2d at 177-78. We upheld the other four waivers because they were waivers of subdivision standards that did not have corresponding provisions in the zoning ordinance. *Id.* ¶ 10 & n. 9, 769 A.2d at 176-77.

■ [¶ 14] *Perkins* and *York* establish that a Planning Board may be vested with the power to waive municipal subdivision standards so long as the waiver does not, in effect, grant a variance from zoning standards that otherwise govern the zone. The Town and Frustaci assert that Cape Elizabeth's open space zoning standards are in the nature of subdivision standards

---

4. The home rule statute provides, in pertinent part:

Any municipality, by the adoption, amendment or repeal of ordinances or by-laws, may exercise any power or function which the Legislature has power to confer upon it, which is not denied either expressly or by clear implication ....

3. **Standard of preemption.** The Legislature shall not be held to have implicitly denied any power granted to municipalities under this section unless the municipal ordinance in question would frustrate the purpose of any state law.

30-A M.R.S.A. § 3001 (1996).

that may be waived by the Planning Board without a variance. For the reasons that follow, this contention is contrary to the ordinance's establishment of a discrete and comprehensive set of zoning standards for open space subdivisions that take the place of traditional zoning standards in the RC District if an applicant seeks approval for an open space subdivision.

[¶ 15] The ordinance establishes space and bulk standards applicable to open space subdivisions in the RC District that are more lenient than those applicable to traditional subdivisions:

|  | Traditional Subdivisions | Open Space Subdivisions |
|---|---|---|
| **Minimum Lot Size** | 20,000 square feet | 7,500 square feet (with public sewerage) |
| **Minimum Street Frontage** | 100 feet | 50 feet |
| **Side and Rear Yard Setback** | 20 feet | 5 feet[5] |

Unlike the standards for open space subdivisions, the standards for traditional subdivisions do not have a building envelope requirement. The more lenient lot size, street frontage, and side and rear yard setbacks in the open space standards point to a unique function of the building envelope requirement: it assures that reasonable distances and privacy are maintained between the clustered residences in an open space subdivision.

[¶ 16] The Planning Board's modification of the open space standards in this case has the effect of blending traditional setback standards with higher density cluster developments, resulting in a subdivision that fails to meet the ordinance's requirements for both open space and traditional subdivisions. The Town and Frustaci assert that this blending is permissible because of the ordinance's characterization of the open space standards as "optional" in the RA and RC Districts. This construction is contrary, however, to the plain meaning of the relevant provisions of the ordinance.

[¶ 17] The ordinance's description of the open space standards as "optional" in the RA and RC Districts in section 19–7–2(A)(2) is juxtaposed with the ordinance's description of the open space standards as "mandatory" in the RB District in section 19–7–2(A)(1). The ordinance unequivocally states that "[d]evelopments proposed under the terms of this section *shall* meet all requirements of this section, unless otherwise noted." Zoning Ordinance, § 19–7–2(B)(1) (emphasis added). Accordingly, all subdivision applicants in the RB District and those applicants opting for open space zoning in the RA and RC Districts are bound by the open space zoning standards. Once applicable, the individual open space standards are not optional and must be met "unless otherwise noted."

[¶ 18] Contrary to the suggestion of the Town and Frustaci, the open space standards are also not in the nature of subdivision regulations. The open space standards, set forth in chapter 19 of the Town's code, establish fixed space and bulk standards. In contrast, the Town's subdivision regulations, set forth separately in chapter 16 of the Town's code, estab-

---

5. The five-foot side and rear yard setback for open space subdivisions is established in conjunction with the fifty-foot building envelope setback requirement. Zoning Ordinance § 19–7–2(C)(6).

lish a review process and design standards that principally govern roads, drainage, and utilities. Cape Elizabeth, Me., Subdivision Ordinance §§ 16–2–1 to 16–3–6 [hereinafter Subdivision Ordinance]. Although both the open space standards and the subdivision regulations apply to subdivisions, their subjects are dissimilar and address different aspects of subdivision development.

■ [¶ 19] Because Frustaci elected to proceed with an open space subdivision, the building envelope requirement was neither optional nor a supplementary subdivision regulation subject to Planning Board waiver. As we held in *Perkins* and *York*, a Planning Board's modification of a binding zoning requirement is, in effect, a variance that must instead be committed to the discretion of a ZBA. The authority that section 19–7–2(A)(2) of the Zoning Ordinance purports to grant to the Cape Elizabeth Planning Board to modify the ordinance's open space standards exceeds the Town's home rule authority in violation of 30–A M.R.S.A. § 4353(2)(B), (C), (4–C), and is invalid. Accordingly, Cape Elizabeth's building envelope standard may only be relaxed by way of a variance, and the Planning Board's decision to waive the building envelope standard with respect to the Blueberry Ridge Subdivision must be vacated.

## B. Buffers and Preservation of Trees

■ [¶ 20] The abutters also challenge the Planning Board's failure to require Frustaci to preserve or place vegetative buffers to visually screen the subdivision and to catalog and preserve large trees located on the property, citing section 19–7–2(D)(1)(d) of the open space zoning stan-

dards and section 16–3–1(c) of the Town's subdivision regulation.

1. Section 19–7–2(D)(1)(d) of the Open Space Zoning Standards

[¶ 21] Section 19–7–2(D)(1) of the open space zoning standards, entitled "Priorities for Location of Lots and Open Space," provides that the "Board shall find that individual building lots or building locations are laid out to achieve the following objectives, as applicable. Where the Planning Board finds that objectives conflict, the objectives shall be achieved in the order listed[.]" Zoning Ordinance § 19–7–2(D)(1). The fourth of six objectives set forth in section 19–7–2(D)(1) is for lots or building locations to be laid out "in a manner that preserves or allows the establishment of a vegetated buffer to serve as an effective visual screen from adjacent properties." Zoning Ordinance § 19–7–2(D)(1)(d).

[¶ 22] The Board's decision does not contain the finding required by section 19–7–2–(D)(1) as to whether the layout of the lots and buildings in the Blueberry Ridge Subdivision will achieve the objectives set forth in the section and, in particular, the extent to which the fourth objective will be achieved relative to the three that precede it. Accordingly, on remand, the Board must make the finding required by section 19–7–2(D)(1) of the open space zoning standards.[6]

2. Section 16–3–1(c) of the Subdivision Ordinance

■ [¶ 23] Section 16–3–1(c) of the Town's subdivision ordinance provides for vegetative buffers, stating "[p]lants or other types of vegetative cover shall be preserved or placed throughout and around

---

**6.** The abutters also assert that section 19–7–2(D)(1) mandates the installation of a vegetative buffer where one does not exist and pro-

hibits the use of stockade fencing as a buffer. However, this assertion is not supported by the language of section 19–7–2(D)(1).

the perimeter of any proposed subdivision to provide for an adequate buffer, reduction of noise and lights, separation between the subdivision abutting properties, and enhancement of its appearance." Subdivision Ordinance § 16–3–1(c). It also provides that when practical, an applicant "shall be required to preserve natural features such as water courses or bodies, existing trees of 10 inches or more in diameter ... [and such other features] which, if preserved, would add to the attractiveness of the subdivision." *Id.* § 16–3–1(o). The Planning Board may grant waivers of subdivision standards if it "finds that undue hardship, practical difficulties or restriction upon imaginative and otherwise desirable design may result from strict compliance with this Ordinance" and if it finds that a proposed alternative meets four additional requirements. *Id.* § 16–3–5.[7]

[¶ 24] The Board found that the combination of vegetative plantings and wooden stockade fencing would provide "an adequate buffer that reduces noise and lighting, separates the subdivision from abutting properties and enhances the subdivision." It also found that "the combination of a berm and fencing along the perimeter of the subdivision abutting the Charlotte Rd. properties is appropriate to protect the subdivision lots from headlight wash and delineate [*sic*] the separation between the subdivision and the abutting properties and former road right-of-way of Charlotte Rd."

[¶ 25] Although the Board found that the use of fencing as part of the buffer was both "adequate" and "appropriate," it did not make the findings required by section 16–3–5 to support a waiver of the purely vegetative buffering contemplated by section 16–3–1(c). Subdivision Ordinance § 16–3–1(c) (stating that "[p]lants or other types of vegetative cover *shall be preserved or placed* throughout and around the perimeter of any proposed subdivision") (emphasis added). On remand, the Board must make findings pursuant to section 16–3–5 if it is to approve Frustaci's proposal to use wooden fencing as part of the subdivision's buffer. *See Fitanides v. City of Saco,* 2004 ME 32, ¶¶ 25–26, 843 A.2d 8, 17–18 (vacating a Planning Board's waiver of a subdivision regulation because the Board failed to make specific findings of fact as required to support a waiver).

[¶ 26] The Board also expressly found that "the applicant has, when practical, preserved natural features and trees and that the Subdivision Ordinance does not preclude the removal of trees for development." Frustaci submitted, and the Board considered, detailed plans and information concerning the design of the buffer for the subdivision. Contrary to the abutters' claim, the Board made the findings required by section 16–3–1(o) on this point and the findings were supported by substantial evidence in the record. *See Thacker v. Konover Dev. Corp.,* 2003 ME 30, ¶¶ 8, 10, 12, 818 A.2d 1013, 1017–19.

The entry is:

Judgment vacated and remanded to the Superior Court with instructions to remand to the Cape Elizabeth Planning

---

7.  The Planning Board must find that:
    [The] alternative (1) will not create more hazardous traffic conditions or less sanitary sewage disposal conditions than strict compliance, (2) will provide more varied and imaginative subdivision layout and design, (3) will secure substantially the standards of road design and construction required by this Chapter and the Zoning Ordinance, and (4) will not have the effect of nullifying the intent and objectives of the Comprehensive Plan or this Chapter[.]
    Subdivision Ordinance § 16–3–5.

Board for further proceedings consistent with this opinion.