2009 ME 77

**Terry P. WYMAN**

v.

**TOWN OF PHIPPSBURG et al.**

Supreme Judicial Court of Maine.

Argued: June 17, 2009.

Decided: July 28, 2009.

Roger R. Therriault, Esq. (orally), Michael E. Therriault, Esq., Therriault & Therriault, Bath, ME, for Terry P. Wyman.

James A. Hopkinson, Esq. (orally), Hopkinson & Abbondanza, Portland, ME, for Bruce L. Poliquin.

Jessica Maher, Esq. (orally), Moncure & Barnicle, Topsham, ME, for the Town of Phippsburg.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

CLIFFORD, J.

[¶ 1] Terry P. Wyman appeals from a judgment entered in the Superior Court (Sagadahoc County, *Horton, J.*) pursuant to M.R. Civ. P. 80B, affirming the consolidated decision of the Town of Phippsburg Board of Appeals in which the Board of Appeals affirmed the Town of Phippsburg Planning Board's approvals of Bruce L. Poliquin's applications for a new business permit and a lesser buffer permit in connection with his proposed beach club development. Wyman argues that the lesser

buffer permit constitutes an improperly granted variance, and that the record does not support the Planning Board's findings of fact as to both the lesser buffer permit and the new business permit. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Developer Bruce Poliquin owns six rental cottages on Popham Beach in Phippsburg. In March of 2006, Poliquin submitted an application to the Town's Planning Board seeking a new business permit pursuant to Phippsburg, Me., Land Use Ordinance § 2.3 (May 10, 2006). The application proposed development of the Popham Beach Club, a private recreational business with a maximum of 150 memberships, which offer members beach access and a place to socialize. Poliquin sought to replace two of the existing cottages and a shed with a beach club and storage building with approximately the same size footprint as the two eliminated cottages.

[¶ 3] Following two public hearings and three site visits, the Planning Board issued a decision dated May 24, 2006, approving, with various conditions, Poliquin's request for a new business permit. Among those conditions, Poliquin was to "secure a Lesser Buffer permit from the Planning Board to allow the Club building a 65' setback from the Wyman property line."

[¶ 4] To comply with this condition, Poliquin submitted an application to the Planning Board seeking a lesser buffer than the one-hundred-foot buffer required by section 1.6(a) of the Ordinance. *See* Phippsburg, Me., Land Use Ordinance § 1.6(a) (June 5, 1993). In May of 2006, the Planning Board approved Poliquin's request for a lesser buffer of sixty-five feet from the easterly abutters, Terry P. Wyman and Jean Wyman. *See* Phippsburg, Me., Land Use Ordinance § 1.7 (May 10, 2006).

[¶ 5] Terry Wyman appealed to the Board of Appeals both the Planning Board's decision to approve the new business permit, and its decision approving the lesser buffer permit. *See* Phippsburg, Me., Board of Appeals Ordinance §§ IV(A)(4)(d), VI (May 10, 2006). The Board of Appeals affirmed the Planning Board's grant of the new business permit, but remanded the lesser buffer permit to the Planning Board because Wyman was not given personal notice of the hearing. *See* Phippsburg, Me., Land Use Ordinance § 2.3 (May 10, 2006); Phippsburg, Me., Board of Appeals Ordinance § VIII (May 10, 2006).

[¶ 6] On remand, the Planning Board held a new public hearing after giving the requisite notice, during which it reconsidered Poliquin's original lesser buffer application, as well as additional evidence from the Wymans and other interested parties. The Planning Board again unanimously voted to approve Poliquin's application for a lesser buffer permit. Wyman appealed this decision to the Board of Appeals, which affirmed the Planning Board.

[¶ 7] Pursuant to M.R. Civ. P. 80B, Wyman filed complaints in the Superior Court regarding both decisions of the Planning Board: the grant of a new business permit and the approval of a lesser buffer. The Superior Court affirmed both decisions, and Wyman now appeals.

## II. DISCUSSION

[¶ 8] We review directly the operative decision of the municipality, in this case, the Planning Board, "for abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." *Griswold v. Town of Denmark*, 2007 ME 93, ¶ 9, 927 A.2d 410, 414 (quotation marks omitted); *see also Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶ 7, 868 A.2d 161, 163–64; Phippsburg,

Me., Board of Appeals Ordinance § IV(A)(4)(d) (May 10, 2006) (stating that the Board of Appeals exercises only appellate jurisdiction in reviewing such decisions of the Planning Board).

[¶ 9] In a provision entitled "Buffer Zones," the Town's Land Use Ordinance requires that any "business, including any accessory buildings and parking lots, and adjacent residential lot lines" must comply with minimum buffer requirements. Phippsburg, Me., Land Use Ordinance § 1.6 (May 10, 2006). "Commercial and other non-residential buildings or other commercial or industrial activities shall have a minimum side and rear yard distance of at least 100 feet from residential lot lines." Phippsburg, Me., Land Use Ordinance § 1.6(a) (May 10, 2006).

[¶ 10] The Planning Board granted Poliquin a permit for what the Ordinance terms a "lesser buffer," pursuant to section 1.7 of the Ordinance. Phippsburg, Me., Land Use Ordinance § 1.7 (May 10, 2006). Section 1.7, entitled "Lesser Buffer Zones" provides, in its entirety:

> The Planning Board may approve lesser buffer zones providing the purposes of this Ordinance are maintained. Lesser buffers may be approved when the topography of the land, the nature of the vegetation, or building(s) provides screening that is equal in protection to the required width of buffers. Lesser buffers may also be approved when the character of a neighborhood is predominantly commercial.
>
> The Planning Board shall approve, deny, or approve with conditions all applications for lesser buffers. The applicant shall have the burden of demon-

strating that the topography of the land, the nature of the vegetation, or building(s) provides screening *that is equal in protection to the required width of buffers*, or that the character of the neighborhood is predominantly commercial.

Phippsburg, Me., Land Use Ordinance § 1.7 (May 10, 2006) (emphasis added). Pursuant to section 1.7, the Planning Board found that with the vegetative screening proposed by Poliquin, sixty-five feet of buffer was equal in protection to the one hundred feet of buffer without the vegetation. Based on that finding, the Planning Board issued a decision reducing the required buffer on Poliquin's property from one hundred feet to sixty-five feet from Wyman's residential property line.

[¶ 11] Wyman challenges this decision, and urges us to interpret section 1.6 to impose a binding setback requirement that can be altered only by obtaining a variance from the Town's Board of Appeals pursuant to 30–A M.R.S. § 4353(4) (2008).[1] He argues that because the plain language of section 1.6 does not require any particular *type* of buffering, such as landscaping, it imposes a straight distance requirement that is identical in form and purpose to a setback.

[¶ 12] The Ordinance defines "setback" as "[t]he minimum horizontal distance from a lot line to the nearest part of a structure." Phippsburg, Me., Land Use Ordinance § 5.2 (May 10, 2006). It further defines a "variance" as:

> A relaxation of the terms of this Ordinance where such variance would not be contrary to the public interest and

---

1. "[B]oard[s of appeals] may grant a variance only when strict application of the ordinance to the petitioner and the petitioner's property would cause undue hardship." 30–A M.R.S. § 4353(4) (2008); *see also* Phippsburg, Me., Land Use Ordinance § 4.7 (May 10, 2006) (granting to the Board of Appeals the exclusive authority to grant variances); Phippsburg, Me., Board of Appeals Ordinance § IV(AX2) (May 10, 2006) (setting forth the requirements for the Board of Appeals' grant of a variance).

where, owing to the conditions peculiar to the property and not the result of the actions of the applicant, a literal enforcement of this Ordinance would result in unnecessary or undue hardship.

Phippsburg, Me., Land Use Ordinance § 5.2 (May 10, 2006). Although the Ordinance does not define "buffer," that term is commonly understood to refer to a mechanism by which to decrease noise and field of vision between neighbors and to increase privacy. *See, e.g., York v. Town of Ogunquit,* 2001 ME 53, ¶ 4 n. 4, 769 A.2d 172, 174.

[¶ 13] We do not read section 1.6 of the Ordinance to impose a setback requirement requiring a variance from the Board of Appeals. Contrary to Wyman's suggestion, section 1.6—establishing a hundred-foot distance requirement—cannot be read in isolation, and instead must be construed in conjunction with its similarly-titled sister provision, section 1.7. *See Conservation Law Found., Inc. v. Dep't of Envtl. Prot.,* 2003 ME 62, ¶ 23, 823 A.2d 551, 559 ("A particular statute is riot reviewed in isolation but in the context of the statutory and regulatory scheme."). In reading these two "buffer" provisions together, the plain language of the Ordinance presents a developer with two equally-permissible alternatives: to create a straight distance of one hundred feet, or to demonstrate that the vegetation or topography or nature of the buildings creates a buffer sufficient to afford the same level of screening that the straight distance of one hundred feet would afford. In this way, the buffer requirements are not reduced, but rather the developer is authorized to comply with the buffer requirements by more than one acceptable means. Whereas a setback is a straight distance requirement in all cir-

cumstances without regard to any other conditions such as vegetation, the requirement of a buffer can be satisfied with a reduced distance, provided there is adequate screening through some other means. Indeed, the Town's setback requirements are contained in provisions elsewhere in the Ordinance.[2]

[¶ 14] The purposes of a setback and a buffer are very different. A setback is a minimum distance between developments in order to prevent the construction of buildings too close together; as Poliquin contends, "it is a space and bulk requirement." A buffer, in contrast, requires some combination of distance, landscape, and/or vegetation in order to reduce noise and increase privacy. Poliquin also points out that a buffer is a required distance between uses (commercial and residential).

[¶ 15] Wyman's reliance on our decision in *Sawyer v. Town of Cape Elizabeth,* 2004 ME 71, 852 A.2d 58, is misplaced. In *Sawyer,* the Planning Board issued open space subdivision approval for a proposed development, and in doing so, "modified the building envelope setback requirements of fifty feet and the right-of-way setback of seventy-five feet," instead of approving a buffer consisting of both fencing and vegetation. 2004 ME 71, ¶ 7, 852 A.2d at 61. We concluded that the Planning Board's grant of lesser setbacks of any variety exceeded its authority, and that the modification of the open space setback requirements could be accomplished only by obtaining a variance from the Board of Appeals. *Id.* ¶ 19, 852 A.2d at 64.

[¶ 16] Our decision in *Sawyer* is distinguishable from the present matter on two grounds. First, the Planning Board in

---

**2.** Section 2.5 of the Ordinance requires a seventy-five-foot setback from the "center line of the State and Town maintained roads and 50 feet from the center line of all other roads" as well as a setback of "not less than 20 feet from an adjoining property." Phippsburg, Me., Land Use Ordinance § 2.5 (May 10, 2006).

*Sawyer* approved a reduction in actual setback requirements based on its conclusion that as long as the applicable district, setbacks were fulfilled, the building envelope and right-of-way setbacks need not be met. *Id.* ¶ 7, 852 A.2d at 61. Second, the setback requirements modified by the Planning Board in *Sawyer* contained no alternative means of compliance with the applicable ordinance other than the creation of a straight minimum distance. The Ordinance in the present matter, in contrast, contains multiple equally-effective alternatives to provide broader noise and privacy protection, as opposed to straight distance protection.[3] The buffer provisions in sections 1.6 and 1.7 of the Ordinance do not impose a mandatory setback distance that can be modified only by obtaining a variance from the Board of Appeals.

■ [¶ 17] Finally, contrary to Wyman's other contentions, there is sufficient evidence in the record before the Planning Board to support its findings of fact underlying both the lesser buffer permit and the new business permit. *See Griswold,* 2007 ME 93, ¶ 9, 927 A.2d at 414–15 (stating that we afford deferential review to a Board's findings of fact). More particularly, Poliquin presented evidence, including the testimony and reports of various architects and engineers, to the effect that substantial vegetation will be planted in the area to reduce noise and odors, and an eight-foot fence will be erected between the two properties. A strict code of conduct will also be imposed on members to minimize noise and disruption. Further,

the record contains ample evidence on which the Planning Board could base its findings regarding Poliquin's compliance with parking, noise, odors, vibrations, waste disposal, and dust requirements. *See* Phippsburg, Me., Land Use Ordinance § 2.4 (May 10, 2006).

The entry is:

Judgment affirmed.

---

3. Alternatively, section 1.7 authorizes the Planning Board to approve a buffer of less than one hundred feet if "the character of the neighborhood is predominantly commercial." Phippsburg, Me., Land Use Ordinance § 1.7 (May 10, 2006). The Planning Board in this case did find that the neighborhood of the proposed development is predominantly commercial in accordance with section 1.7, a finding that independently supports the lesser

buffer permit. Nevertheless, because we discern no error in the Planning Board's finding that the vegetation and sixty-five-foot distance proposed by Poliquin provide the same level of protection as a hundred-foot buffer, we need not consider Wyman's alternative contention that the Planning Board's finding that the neighborhood is predominantly commercial is not supported by the evidence.