STATE OF MAINE                                 SUPERIOR COURT
CUMBERLAND, ss.                                CIVIL ACTION
                                               DOCKET NO. AP-20-35


IAN HOUSEAL, JEFFREY CRAWFORD
MICHAELA VEILLETTE, MATTHEW
ANDERSON, LOUIS GARCIA, MONICA
GARCIA, BRYN ARBUCKLE, GAVIN
PORTAS, and HAYLEE HASSON,

        Petitioners,


        v.                                     DECISION


CITY OF PORTLAND,

        Respondent,

        and

FALLBROOK COMMONS DEVELOPMENT
LLC, FALLBROOK PROPERTIES LLC, and
SAINT JOSEPH'S REHABILITATION
AND RESIDENCE LLC.

        Parties-in-interest.


This matter comes before the court on Petitioners' appeal pursuant to M. R. Civ.

P. 80B. For the following reasons, Petitioners' appeal is denied and the Planning Board's

decision is upheld.

## I. Factual Background

### A. Overview

Fallbrook Commons submitted a Level III Site Plan and Conditional Use

Application to Portland's Planning Board in November, 2019. The Project sought to

develop a 90-bed licensed nursing care center at 60 Merrymeeting Drive in Portland. The

purpose of the Project is to replace St. Joseph's rehabilitation and residence nursing care

center operated by Maine Health. St. Joseph's facilities are outdated and no longer meet the standards required of nursing care centers.

The Project sought to build its facility on approximately eight acres of undeveloped land. The Project site is located in Portland's R-3 Zone and is situated adjacent to an assisted living facility currently operated by Fallbrook Commons. By virtue of the Project's proximity and connection to Fallbrook Commons, the Project sought to create an accessible medical campus that provided various levels of support services for residents and visitors.

Several public meetings were held regarding the proposed Project. The first public meeting was held on February 18, 2020. Fallbrook Commons mailed notice of the meeting to all property owners within five-hundred feet of the Project site and approximately twenty-five residents attended the meeting. Portland's Planning Board also held two public workshops to discuss the Project; which took place on June 9, 2020, and September 15, 2020. A Public Hearing and deliberation on the application took place on November 10, 2020. At the public hearing, the Planning Board voted unanimously to approve the Project and grant a conditional use permit. The Planning Board also granted the Project two waivers form the City's Site Plan standards: (1) the Preservation of Significant Natural Features standard in Section 14-526(b)(1) of the Land Use Code; and (2) the Parking Lot and Parking Space Design standard in Section 1.14 of the City's Technical Manual.

The Petitioners are local residents who spoke in opposition to the Project. Petitioners brought this appeal pursuant to Rule 80B of the Maine Rules of Civil Procedure and ask this court to vacate the Board's approval of the Level III Site Plan and Conditional Use Application. The Petitioners argue that the Board erred when it failed

2

to follow certain procedural requirements required for public meetings on conditional use permits and failed to make the necessary findings of fact.

### B. Public Hearings

Due to the COVID-19 pandemic, the public meetings held on June 9, September 15, and November 10, were all held remotely via Zoom. At the June 9 workshop, Petitioner Houseal organized an event in his front yard where concerned residents were able to watch the Zoom meeting and provide public comment from a single Zoom account. The Zoom format allowed the concerned residents to voice their concerns but the platforms video and chat functions were otherwise not available to the public. Houseal and those gathered in his yard were able to comment during the workshop's public comment period. However, the Board informed participants that, at future meetings, public comment would need to come from individual Zoom accounts and that multiple comments from one account would no longer be permitted. Houseal also submitted written public comment which was included in the record the day before the June 9 workshop.

Houseal reviewed the Projects revised Site Plans the day before the September 15 workshop. Houseal felt that the revised Site Plan had not incorporated the concerns voiced by the public. Houseal participated in the September 15 Zoom meeting and provided further public comment. Houseal stated that he believed that the Site Plan and other material presented by the Project were misleading.

Houseal and several other Petitioners participated in the public hearing held via Zoom on November 10. It appears that some concerned residents were confused with the virtual format and were unable to determine what members of the public were participating in the meeting. However, it is not alleged that the Zoom format prevented any participants from providing public comment. Petitioners allege that the Planning

3

Board's final discussion and approval of the Project was brief and failed to address the concerns expressed by the public.

## II. Standard of Review

The scope of judicial review under Rule 80B is deferential and limited. *Beal v. Town of Stockton Springs*, 2017 ME 6, ¶ 13, 153 A.3d 768. The court examines the municipality's decision for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *Bryant v. Town of Wiscasset*, 2017 ME 234, ¶ 11, 176 A.3d 176. "Substantial evidence" exists if there is any evidence in the administrative record that a reasonable mind would accept as sufficient to support the municipality's conclusion. *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 8, 746 A.2d 368. The party seeking to overturn a municipal decision bears the burden of persuasion and the court will not overturn a board's decision "unless the record compels a contrary finding[.]" *Northeast Empire v. Town of Ashland*, 2003 ME 28, ¶ 9, 818 A.2d 1021.

## III. Discussion

The Petitioners make several arguments for reversal: (1) the Planning Board's Zoom hearings were procedurally improper; (2) the Planning board failed to make the requisite findings of fact; (3) the conditional use permit constituted an improper zoning variance; and (4) the Planning Board failed to ensure that the interests of abutting property owners were adequately protected.

### A. Planning Board Procedure

At the outset, the Petitioners argue that when the Planning Board considers whether to grant a conditional use permit, the Planning Board must adhere to the same procedural rules that apply to a zoning board of appeals. In particular, the Petitioners argue that public hearings and workshops on conditional use permits are quasi-judicial proceedings and thus the Planning Board was required to provide the Petitioners with

4

an opportunity to submit rebuttal evidence and cross-examine those who appeared before the Board. *See generally* 30-A M.R.S. § 2691(3)(D).

The Petitioners' argument rests on 30-A M.R.S. § 2691, which states that: "Any municipality which adopts a zoning ordinance shall establish a board of appeals[.]" 30-A M.R.S. § 4353. "In deciding any *appeal*, the board may . . . *approve the issuance* of a . . . conditional use permit in strict compliance with the ordinance except that, if the municipality has authorized the planning board . . . to issue these permits, an appeal form the granting or denial of such a permit may be taken directly to the Superior Court if required by local ordinance[.]" 30-A M.R.S. § 4353(2)(B)(emphasis added).

Here, the Petitioners' reliance on section 4353 is misplaced. This statute applies to an appeal from a Planning Board's grant or denial of a conditional use permit. The rules applicable to a Planning Board's deliberative process are governed by the Portland's Land Use Code. *See MSR Recycling, LLC v. Weeks & Hutchins, LLC.,* 2019 ME 125, ¶¶ 8-14, 214 A.3d 1. The procedures applicable to the Planning Board's decision on a conditional use permit does not entitle all interested parties to cross examine each witness at every planning board meeting. *See generally* Land Use Code §§ 14-25, 14-26, 14-33. Accordingly, the Planning Board procedures challenged by the Petitioners are not subject to the strict requirements of 30-A M.R.S. § 2691.

Because the Petitioners do not challenge whether the Planning Board followed the procedures found in the applicable Land Use Code, the court need not address the issue further. Accordingly, the only procedural issues left for the court to decide are whether the Planning Board meetings complied with Maine's Freedom of Access Act.

### a. Public Meetings

Under the Freedom of Access Act, "all public proceedings must be open to the public and any person must be permitted to attend a public proceeding." 1 M.R.S. §

5

403(1). However, "due to the outbreak of COVID-19, a body subject to [the FAA] may conduct a public proceeding through telephonic, video, electronic or other similar means of remote participation[.]" 1 M.R.S. § 403-A(1). If a public hearing is conducted remotely, the following conditions must be met: (1) notice of the public proceeding and method by which the public may attend must be given according to law; (2) each member of the body who is participating must be able to hear and speak to all other members during the proceeding and members of the public must be able to hear all members participating; (3) the body allows for participation by the public through telephonic, video, electronic or other similar means of remote participation; and (4) all votes taken during the proceedings must be by roll call vote. 1 M.R.S. §§ 403-A(1)(A)-(D). However, procedural errors "are harmless and will not be grounds to vacate a [Board's] decision unless they are inconsistent with substantial justice and result in prejudice." *Walfram v. Town of N. Haven*, 2017 ME 114, ¶ 20, 163 A.3d 835.

Here, the Petitioners have failed to show that the Planning Board meetings violated the FAA's procedural requirements for virtual meetings. Although there is some suggestion that members of the public had difficulty participating in the Planning Board's meetings or were frustrated by the Zoom format, there is no evidence suggesting that any person was actually prohibited from providing public comment. Moreover, there is no suggestion that any of the alleged precrural defects resulted in any prejudice or resulted in the exclusion of evidence. Accordingly, Petitioners have failed to show that the Planning Board's Zoom hearings were conducted in violation of the Freedom of Access Act.

## B. Findings of Fact

The Petitioners next argue that the Planning Board failed to make the necessary finding of fact. This argument is based primarily on the Petitioners' incorrect assertion

6

that the Planning Board must adhere to the same procedures as the Board of Appeals. However, the applicable law requires only that "[e]very agency . . . make a written record of every decision involving the conditional approval or denial of an application . . . ." 1 M.R.S. § 407(1). The record "shall set forth. . . the reason or reasons for its decision and made finding of the fact, in writing, sufficient to appraise the applicant and any interested member of the public of the basis for that decision." *Id.* The Land Use Code articulates specific facts that must be found in order for the Planning Board to Approve a conditional use permit. *See* Land Use Code § 14-474 (requiring that the location will not have a substantially greater negative impact than would normally occur from surrounding uses in the same zoning district); *see also* Land Use Code § 14-88 (requiring that the expansion of existing uses onto land other than the principal site not significantly encroach on residential areas and not displace residential use).

Here, Petitioners argue that the Planning Board made unspecific and conclusory findings. However, the Planning Board issued a nineteen page "Final Approval Letter" and "Planning Board Report" that detailed: the site's existing conditions, the Project's proposed development, relevant public comments and concerns, zoning analysis, and other impacts that the Project could have. The Report also identified specific conditions the Project's Site Plan must satisfy in order to receive a conditional use permit and articulated how the Project met those requisite standards. These findings allow the public or reviewing body to sufficiently ascertain the Planning Board's factual justifications for issuing the conditional use permit. Accordingly, the Petitioners have failed to show that the Planning Board's decision lacked the requisite factual findings to issue a conditional use permit. *See Forester v. City of Westbrook*, 604 A.2d 31, 33 (Me. 1992)("If there is sufficient evidence in the record, the Board's decision will be deemed supported by implicit findings.")

7

## C. Waiver of Technical Requirements

The Petitioners next argue that the Site Plan waivers granted by the Planning Board constitute an improper variance from Portland's zoning ordinance. A Planning Board has the authority to grant waivers from Site Plan and Technical Manual requirements if the Board finds that strict compliance will result in extraordinary and unnecessary hardship or because of other special circumstances of a plan. *York v. Town of Ogunquit*, 2001 ME 53, ¶ 10, 769 A.2d 172. However, a Planning Board's waiver authority cannot, in reality, operate so as to allow for variances to a town's zoning ordinances. *See Perkins v. Town of Ogunquit*, 1998 ME 42, ¶ 9, 709 A.2d 106.

Here, the Planning Board granted two waivers from Site Plan standards: (1) the Preservation of Significant Natural Features standard in section 14-526(b)(1) of the Land Use Code; and (2) the Parking Lot and Parking Space Design standard in Section 1.14 of the City's Technical Manual. The Planning Board did not grant any waiver of the conditional use standards themselves, nor did it alter any of the City's other zoning ordinances. Instead, the "Final Approval Letter" and "Planning Board Report" found that extraordinary circumstances exist that warranted waiver of a Site Plan's usual technical standards. As outlined above, the Planning Board's factual findings are sufficient to inform interested parties of the basis for the Planning Board's decisions. Accordingly, the waivers granted by the zoning board did not constitute an improper variance and the decision is supported by substantial evidence in the record.

## D. Impact to Abutting Property

Finally, the Petitioners argue that the Planning Board failed to ensure that the Project's conditional use permit would minimize the adverse effects suffered by abutting property owners. However, Section 14-474(d) cited by the Petitioners states only that the Board "*may* impose such reasonable conditions upon the premises benefited by a

8

conditional use as may be necessary to prevent or minimize adverse effects therefrom upon other property in the neighborhood." (emphasis added). Accordingly, the Planning Board was not compelled to impose restrictions on the Project for the sole purpose of reducing the adverse effects that the conditional use may have on neighboring property. The Petitioners have thus failed to show that the Planning Board's failure to impose additional Project conditions was improper.

## IV. Conclusion

The Petitioners have failed to show that the Planning Board's approval of the Project's Level III Site Plan and Conditional Use Application was an error of law, abuse of discretion, or not supported by substantial evidence in the record. Accordingly, the court upholds the decision of the Planning Board.

DATE: __6/1/24__

John O'Neil
JUSTICE, SUPERIOR COURT

Entered on the Docket: 6/4/2021

9